PROVIDENT BANK, APPELLEE, *v.* BARNHART, APPELLANT; CHRYSLER CORPORATION, APPELLEE.

(Nos. C-810565 and 810566—Decided August 11, 1982.)

*Mr. William A. Posey,* for appellee Provident Bank.

*Mr. Terry Serena,* for appellant Barnhart.

*Mr. Richard M. Hopple,* for appellee Chrysler Corp.

BLACK, J. The primary issues in this appeal are (1) whether a consumer's defense against a retail seller may be asserted against the financial institution to which the retail installment contract was assigned, under a "Notice of Preservation of Claims and Defenses" inserted in the contract pursuant to a Federal Trade Commission (FTC) regulation; and (2) whether the financial institution's recovery against the consumer must be limited in amount by the doctrine of avoidable consequences (sometimes called the duty to mitigate damages).

I

The retail installment contract was executed on August 23, 1978, by defendant-appellant, Charlotte Barnhart, in connection with her purchase of a new 1978 Plymouth Horizon from Westwood Chrysler-Plymouth (Westwood), which in turn assigned the contract to the Provident Bank (Provident). This will be referred to as the 1978 transaction.

Appellant's new car suffered from numerous defects which Westwood was unable to cure. After ten months of unsuccessful attempts to repair, appellant agreed to meet a Chrysler representative at Westwood to discuss settlement of her warranty claims. The Chrysler representative was absent when she arrived at Westwood, and appellant carried on negotiations with Westwood. Those negotiations resulted in what appellant labels an accord and satisfaction with respect to her warranty claims, whereby appellant agreed to buy a new 1979 vehicle in exchange for the trade-in of the 1978 car at a value equal to the unpaid balance of the 1978 contract. Westwood agreed to pay Provident the amount due under the 1978 obligation, and received appellant's new obligation for the 1979 vehicle. This will be called the 1979 transaction.

Westwood, however, failed to pay Provident any amount due on appellant's note, for reasons not apparent on the record. Westwood became insolvent, and the majority of its assets were seized by its creditors. The record fails to disclose what disposition was made of appellant's 1978 vehicle, but Provident conceded in oral argument that it retained title to that vehicle as security under the 1978 retail installment contract. The record is silent about Provident's attempt to obtain satisfaction of appellant's 1978 obligation by recourse against that vehicle, and the record fails to establish the market value of that vehicle.

Provident instituted this action against appellant for the entire balance due under the 1978 obligation. Appellant set up the affirmative defense of accord and satisfaction and then filed a third-party complaint against Chrysler Corporation, Westwood, the individual owner of Westwood, Larry Rigby, and the First National Bank.[1] Provident was granted summary judgment against appellant for the balance due on the 1978 obligation. Chrysler won summary judgment dismissing it from the case. The court

---

[1] The First National Bank was dismissed from the action and is not involved in this appeal.

finding no just reason for delay, this appeal ensued.

## II

Appellant claims in her first assignment of error that the trial court improperly granted Provident summary judgment against her by finding that the alleged accord and satisfaction was not assertable against Provident. We find merit in this assignment.

The 1978 transaction contained a Notice of Preservation of Claims and Defenses as follows:

"Notice

"Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."

FTC Regulation 16 C.F.R. 433.2 (1978) deems it an unfair or deceptive act or practice for a lender or seller to take or receive a consumer credit contract which fails to contain the preceding notice in at least ten point bold face type.[2]

Appellant and Provident agree that the 1978 retail installment contract was a consumer credit contract governed by 16 C.F.R. 433.2 (1978), and that Provident is subject to any claim or defense appellant could assert against Westwood, provided that the claim or defense is one "arising out of" the original 1978 transaction or "connected with [that] transaction." Federal Trade Commission Staff Guidelines (May 4, 1976). The parties

---

[2] In order to determine the effect of this notice on the relationship between the parties to this appeal, it is useful to review the history which gave rise to the FTC's requiring its inclusion in all consumer credit contracts.

Under the common law of contracts when a buyer's obligation to pay was assigned by the seller to a third party, the assignee took the assignment subject to the defenses the buyer could assert against the seller-assignor. However, in an increasingly complex commercial world where quick circulation of commercial paper was to be encouraged, assignees desired to be insulated from the disputes between the original contracting parties. They sought to use the holder in due course doctrine to provide such protection. As codified in R.C. 1303.31 to 1303.35, a holder who takes a negotiable instrument for value, in good faith and without notice of any defect or defense, is a holder in due course entitled to take the instrument free and clear of all claims and personal defenses of all other persons or parties to the instrument. Unfortunately, the holder in due course doctrine, originally designed as a shield to protect bona fide purchasers of commercial paper, evolved into a sword for the unscrupulous businessman. He could sell nonconforming goods under a contract and assign that note to an independent lender before the buyer discovered the defects in the goods and rescinded the contract. The buyer was obligated to pay the lender under the terms of the note but his recourse against the seller could be lost because the seller had either sheltered his assets in another corporation, become insolvent, or fled the jurisdiction. In order to rectify this unfair situation, the courts and legislatures modified the holder in due course doctrine to permit the consumer under a retail installment contract to assert against the holder-creditor whatever defenses the consumer had against the seller. *Unico* v. *Owen* (1967), 50 N.J. 101, 232 A. 2d 405; *Security Central Natl. Bank* v. *Williams* (1976), 52 Ohio App. 2d 175 [6 O.O.3d 167]; R.C. 1317.031; FTC Reg. 16 C.F.R. Part 433 (1978).

For instance, R.C. 1317.031, as effective in 1978, provided:

"(A) Notwithstanding section 1303.34 of the Revised Code, a retail buyer who executes an installment note in connection with a consumer transaction may assert as a defense to a claim by a holder in due course as defined in section 1303.31 of the Revised Code, *any defense* which the buyer may assert against the retail seller * * *." (Emphasis added.)

For the purposes of this litigation we shall construe R.C. 1317.031 to be *in pari materia* with 16 C.F.R. 433.2 (1978) and assume, but not decide, that they have the same legal effect.

disagree on the character of the relationship between the 1978 and the 1979 transaction. Provident contends that the 1979 transaction was totally distinct and unrelated to the 1978 transaction. Contrary to appellant's contention that the 1979 transaction was one arising out of or connected with the 1978 transaction, Provident refers to the 1979 transaction as merely a purchase and trade-in, asserting that appellant's primary motivation for the 1979 transaction was to acquire a new car. We find nothing in the record to conclude the issue in that manner, as is required for summary judgment.

In her deposition, appellant states that on the day she negotiated for the purchase of the 1979 car, her original intention was to have the 1978 car fixed pursuant to the warranties arising under the 1978 transaction. She went to Westwood to discuss her warranty claims with a Chrysler representative, but in his absence, she was persuaded by Westwood's salespeople to agree to a settlement of those claims.

A summary judgment cannot be granted if the record, construed in the light most favorable to the party who opposes the motion, discloses any genuine issue of material fact remaining for trial. Civ. R. 56(C). Clearly, there is an unresolved factual dispute as to whether the 1979 transaction was (1) an attempt by Westwood to settle appellant's warranty claims and therefore arose out of or was connected to the 1978 transaction, or (2) a totally unrelated agreement to purchase a new car and trade in her old car. This dispute is material to the issues before the trial court.[3] Provident was not entitled to summary judgment.

---

[3] The materiality of the unresolved factual question stems from appellant's claim that Provident, as the assignee of a retail installment contract that is also a consumer credit contract, stands in the shoes of Westwood, the assignor-seller in the 1978 transaction.

In this appeal, it is not necessary for us to reach, and we do not now decide, the nature or the scope of the "claims and defenses" that appellant could assert against Provident. Nevertheless, it may be helpful to note that if the 1979 transaction was an accord and satisfaction of claims and defenses under the 1978 transaction, the failure of Westwood to pay Provident may have destroyed that accord and satisfaction, thereby reviving appellant's original claims and defenses against Westwood concerning the 1978 car. If revived against Westwood, these claims and defenses may be assertable against Provident under the FTC Notice and R.C. 1317.031 (effective April 4, 1973). The purpose of the FTC Notice is:

"[T]he public policy determination that, as between an innocent consumer and a third-party financer, the latter is generally in a vastly superior position (1) to return the cost to the seller, where it properly belongs, (2) to exert an influence over the behavior of the seller in the first place, and (3) to the extent the bank cannot return the cost (as in the case of fly-by-night dealers), to 'internalize' the cost by spreading it among all consumers as an increase in the price of credit." Fonesca & Teachout, 1 Handling Consumer Credit Cases 62, Section 2:18 (2 Ed. 1980); Kanwit, Federal Trade Commission Regulatory Manual, Section 19.08 (1979).

The FTC Notice allows the obligor to sue the assignee for the seller-assignor's faulty performance. *Aillet* v. *Century Finance Co.* (La. App. 1980), 391 So. 2d 895; *Saporita* v. *Delco Corp.* (S. Ct. 1980), 104 N.Y. Misc. 2d 527, 428 N.Y. Supp. 2d 581; *Gill* v. *Caribbean Home Remodeling Co.* (S. Ct. 1979), 73 App. Div. 2d 609, 422 N.Y. Supp. 2d 448. This has led one commentator to remark that the FTC "rule has in effect made the creditor a *guarantor* of the seller's performance * * *." (Emphasis added.) Fonesca, *supra* (Supp. 1982); *Aillet* v. *Century Finance Co.*, *supra* (finding finance company liable for assignor's nonperformance).

It may be that the appellant is entitled to no more than defensive measures against Provident's claim, under R.C. 1317.01 *et seq.* It may also be that to the extent the case is not governed by the Retail Installment Sales Act, it is governed by R.C. 1302.01 *et seq.* (U.C.C. Article 2), or under R.C. 1301.03, by principles of law and equity. We refrain from venturing further down the path of speculation.

### III

We hold that there is another genuine issue of material fact precluding Provident's summary judgment; that is, the issue of what Provident is entitled to recover. The record does not disclose what disposition was made by Westwood of the 1978 automobile after Barnhart surrendered it. Provident held the certificate of title in accordance with its security interest in the automobile, and still holds it.

Provident was not entitled to a summary judgment in the amount of the balance facially due on the Barnhart note, because the record fails to demonstrate that Provident was entitled to that amount as a matter of law. Under the doctrine of avoidable consequences, sometimes called the duty to mitigate damages,[4] Provident was not entitled to recover damages that it could reasonably have avoided by realizing on the value of the security held by it. *F. Enterprises, Inc.* v. *Kentucky Fried Chicken Corp.* (1976), 47 Ohio St. 2d 154, 159-161 [1 O.O.3d 90]; *Maloney* v. *General Tire Sales* (1973), 34 Ohio App. 2d 177, 185 [63 O.O.2d 289]; *Hough* v. *Stone* (1925), 21 Ohio App. 444, 453. The doctrine of avoidable consequences requires only reasonable, practical care and diligence, not extraordinary measures to avoid excessive damages. 22 American Jurisprudence 2d, Damages, Section 32 (1965); 30 Ohio Jurisprudence 3d, Damages, Section 17 (1981). The record, however, is silent on whether Provident had any practical alternative with respect to liquidating the security, and if so, whether it acted unreasonably.

Provident was not entitled to summary judgment. Appellant's first assignment is sustained.

### IV

We find no merit in appellant's second assignment of error that the trial court erred in denying appellant's motion for leave to amend her complaint. The amended complaint sought to set up the affirmative defense of estoppel, which is waived if not timely pleaded. Civ. R. 12(H). Appellant's motion was filed about fifty days after summary judgment was granted and the court did not abuse its discretion in finding the motion untimely. Appellant's second assignment is overruled.

### V

Appellant claims in her third assignment of error that the court improperly granted Chrysler summary judgment because there existed a genuine issue of material fact as to whether Westwood had apparent authority to act for Chrysler. In support of its motion for summary judgment Chrysler submitted the affidavit of its assistant secretary, H. J. Pridmore, wherein he specifically denied the existence of any agency between Chrysler and Westwood and stated that Chrysler had no ownership interest in Westwood or any right to control Westwood. Appellant's affidavit in opposition is unavailing, because it does no more than allege that she discussed her warranty problems with a Chrysler representative, and that she received mail from Chrysler regarding the purchase of the 1979 automobile. We find nothing in appellant's affidavit to suggest that Chrysler either made Westwood its agent or held it out as such. Finding no genuine

---

[4] The expression of the doctrine of avoidable consequences as a duty of the injured party to mitigate damages has been criticized, because the doctrine is no more than a principle of law that limits the amount of damages the injured party can recover. 22 American Jurisprudence 2d, Damages, Section 30 (1965). We do not hold that Provident had a duty to repossess and sell the 1978 car, but that its entitlement to a judgment against Barnhart is limited by the doctrine of avoidable consequences.

issue of material fact, we overrule appellant's third assignment of error.

The judgment of the trial court is reversed as to Provident and affirmed as to Chrysler. The cause is remanded for further proceedings.

*Judgment accordingly.*

SHANNON, P.J., and KEEFE, J., concur.