**MILCHEN, Appellant,**

**v.**

**BOB MORRIS PONTIAC–GMC TRUCK et al.; Bank One, Appellee.**

[Cite as *Milchen v. Bob Morris Pontiac–GMC Truck* (1996), 113 Ohio App.3d 190.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 95CA006271.

Decided July 31, 1996.

*Ghada K. Halasa*, for appellant.

*Rosemary Taft Milby*, for appellee.

SLABY, Judge.

Appellant, Joshua P. Milchen, appeals from the decision of the Lorain County Court of Common Pleas granting the Civ.R. 12(B)(6) motion of appellee, Bank One, to dismiss. We reverse and remand.

Appellant filed suit against Bob Morris Pontiac–GMC Truck and two salespersons employed by the automobile dealership (collectively, "the dealer"). In his complaint, appellant stated that the dealer fraudulently obtained appellant's signatures on documents that resulted in the purchase of a vehicle. Bank One, which provided the loan documents and financing for the purchase, was also joined as a party. The case against the dealer remains, pending trial; but the trial court granted Bank One's 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Appellant asserts that this dismissal was in error or, in the alternative, he should have been permitted to amend his complaint, and that the dismissal was against public policy.

Appellant's complaint contains a number of factual allegations upon which he relies to state his cause of action. "In considering a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 756. Accordingly, the trial court was required to treat all of the following factual allegations as true.

On May 27, 1995, appellant and his fiancee visited the dealer to inquire about a 1991 Grand Prix that had been advertised in the newspaper. Appellant informed the dealer that he could not purchase the $11,800 vehicle without financial

assistance from his father and grandfather, as he was only nineteen years old, and had just recently started a job that paid only $5 per hour. The dealer urged appellant to take the vehicle home for a three-day "test drive" over the Memorial Day weekend to show his father and grandfather and obtain their consent. He was then given a stack of mostly blank documents, piled one on top of the other, and was told that he needed to sign them and leave a deposit "on hold" prior to taking the vehicle for the "test drive." Appellant signed the blank forms and contracts, without having the opportunity to read them, and gave the dealer two checks totalling $3,000.[1] The dealer assured appellant that the paperwork was not for the purchase of the vehicle, but was only required as a precaution before he could take the vehicle off the lot, in the event that "something happened" while it was with him.

After consulting with his family, appellant realized he could not afford the vehicle and attempted to return it on May 30. The dealer refused to accept the vehicle, stating that appellant had purchased it and could not return it. Appellant left the vehicle on the dealer's lot, only to discover it parked in front of his residence a few days later. Further efforts by appellant and his family to rescind the alleged purchase proved futile.

Appellant eventually received fully completed, typed copies of the paperwork concerning the transaction. Although some of the documents were the ones that appellant had signed in blank, it appeared as if his signature had been forged on some of the agreements. One of the documents he received was a Bank One Consumer Installment Loan and Security Agreement. Appellant stated that he did not recall seeing a Bank One loan application among the many blank forms he had signed. In fact, he had informed the dealer that he would obtain his own loan if he decided to go forward with the purchase. The Bank One loan document stated that appellant would owe a total of $16,998.66, in addition to a $3,000 down payment. This total included $12,026.69[2] as the amount financed, and $4,971.97 in finance charges over a period of fifty-four months, at a 16.15 percent annual interest rate.

Appellant filed a complaint against the dealer for numerous violations of the Consumer Sales Practices Act, R.C. 1345.01 *et seq.* ("CSPA"). In addition, he alleged false misrepresentations, forgery of his signature, lack of the necessary

---

1. Appellant stated that he informed the dealer that he did not have money in the account to cover the checks. The dealer assured him that the checks would be attached to a "check hold" form and would not be cashed.

2. In addition to the price of the vehicle, the amount financed included several fees and documentary charges, $358.67 for credit life insurance, $696.95 for credit disability insurance, and $995 for twelve-month mechanical breakdown protection. Appellant maintained that he never authorized or even discussed the purchase of these items.

elements to form a contract, and fraud. Bank One was also joined in the complaint as liable "for all claims and defenses which [appellant] could assert against the original Seller of the goods * * *." Bank One filed a Civ.R. 12(B)(6) motion to dismiss, which was granted by the trial court without a hearing and without opinion on October 11, 1995. On October 20, appellant moved for reconsideration, leave to amend his complaint, an injunction, and a hearing. Appellant, upon not receiving a response to this motion prior to the thirty-day deadline for perfecting an appeal,[3] filed this appeal raising three assignments of error.

Assignment of Error I

"The trial court abused its discretion and erred as a matter of law in granting defendant–appellee Bank One's motion to dismiss for failure to state a claim upon which relief may be granted."

The standard for granting a motion for dismissal based solely on the pleadings is well established and very stringent. Before a court may dismiss a complaint for failure to state a claim upon which relief may be granted under Civ.R. 12(B)(6), "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. All factual allegations in the complaint are presumed to be true and all reasonable inferences are made in favor of the complainant. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d at 192, 532 N.E.2d at 755–756. Since only legal issues are presented, an entry of a dismissal on the pleadings is reviewed *de novo*. *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.* (1994), 93 Ohio App.3d 292, 294, 638 N.E.2d 174, 175–176.

Bank One based its motion for dismissal on the assertion that financial institutions are specifically exempted from liability under the CSPA; thus, appellant could not prove any set of facts which would permit any claim for relief against Bank One. See, *e.g.*, *Blon v. Bank One, Akron, N.A.* (1988), 35 Ohio St.3d 98, 519 N.E.2d 363; *Bank One, N.A. v. Childers* (Dec. 23, 1981), Franklin App. No. 81AP–395, unreported, 1981 WL 3699. The provisions of the CSPA are primarily designed to protect "consumers" from unfair, deceptive, and unconscionable sales practices; and the prohibitions are applicable to certain defined "suppliers" involved in "consumer transactions." R.C. 1345.01 to 1345.03. The CSPA specifically excludes transactions between certain classes of persons and

---

3. The appeal was filed November 9, 1995, which was the last business day prior to the thirtieth day for appeal. On November 16, 1995, appellant received the trial court's Journal Entry, dated November 13, 1995, denying his motion in total.

their customers.[4]  R.C. 1345.01(A).  Bank One, which is a financial institution, is exempted from the prohibitions of the CSPA in transactions with its customers. R.C. 1345.01(A) and 5725.01(A).

Appellant, however, does not base his CSPA claims against Bank One on the basis of a *direct* bank-customer transaction, but rather under a theory of *derivative* liability based upon the inclusion of the following language in the Bank One finance agreement, as stated in Count I, item 4 of his complaint:

"The Defendant Lender, Assignee or Holder, Bank One, is liable to [Appellant] for all claims and defenses which [Appellant] could assert against the original Seller of the goods, including the claims under the Consumer Sales Practices Act asserted herein, by virtue of the following clause in the contract:

"ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."

The above notice is required by the Federal Trade Commission ("FTC") and is a part of appellant's contract with Bank One.  Section 433.2(a), Title 16, C.F.R.  This "preservation of claims and defenses" clause, sometimes known as the "FTC holder rule," is designed to abrogate the holder-in-due-course doctrine in order to protect consumers when purchasing goods or services on credit. *Ambre v. Joe Madden Ford* (N.D.Ill.1995), 881 F.Supp. 1182; *Provident Bank v. Barnhart* (1982), 3 Ohio App.3d 316, 3 OBR 370, 445 N.E.2d 746.  The FTC believed it was " 'an unfair practice for a seller to employ procedures in the course of arranging the financing of a consumer sale which separate[d] the buyer's duty to pay for goods or services from the seller's reciprocal duty to perform as promised.' " *Maberry v. Said* (D.Kan.1995), 911 F.Supp. 1393, 1402, quoting 40 Fed.Reg. 53522 (Nov. 18, 1975).  The FTC holder rule reallocates the cost of seller misconduct from the consumer to the creditor. *Maberry v. Said,* 911 F.Supp. at 1402.

---

4. *I.e.,* public accountants and their clients, attorneys and their clients, physicians, dentists and veterinarians and their patients and clients, and persons defined in R.C. 4905.03 (telephone companies, utilities, railroads, etc.) and 5725.01 (financial institutions, insurance companies, dealers in intangibles, etc.).  The Ohio Retail Installment Sales Act, R.C. 1317.01 *et seq.* ("RISA"), which also governs consumer transactions, likewise contains an exemption for the organizations enumerated in R.C. 4905.03 and 5725.01.  R.C. 1317.01(P).  Although RISA and its corresponding exemptions were not mentioned in the case *sub judice,* they are the subject of the cause of action in many of the cases cited by the parties.

Bank One argues that the inclusion of the FTC language in the bank note still does not render a financial institution liable under the CSPA for the acts of third parties. In *Vannoy v. Capital Lincoln–Mercury Sales, Inc.* (1993), 88 Ohio App.3d 138, 145, 623 N.E.2d 177, 182–183, the Ross County Court of Appeals refused to hold a financing bank liable for alleged CSPA violations committed by an automobile dealer, stating that because the CSPA exempts transactions between financial institutions and their customers, "[i]t follows that [the bank] cannot be held liable for any damages awarded for violation of the Consumer Sales Practices Act by [the auto dealer]." However, this case fails to address, or even mention, the applicability of the FTC holder rule. Instead, the court in *Vannoy* based its conclusion upon a footnote in *Blon v. Bank One, Akron, N.A.,* 35 Ohio St.3d 98, 519 N.E.2d 363.[5] The facts in *Blon* are distinguishable from those in the case at bar. In *Blon,* the *bank's own actions* in its direct relationship with the customer were the *subject* of the consumer complaint, not the bank's derivative liability.

Appellant cites *Nations Credit v. Pheanis* (1995), 102 Ohio App.3d 71, 656 N.E.2d 998, to support his claim that Bank One can be held liable under the CSPA.[6] In *Nations Credit,* the inclusion of the FTC clause in the contract led the court to hold the creditor derivatively liable for the seller's violation of the CSPA, even though Nations Credit, as a dealer in intangibles, would not have been subject to the CSPA for its own actions toward the consumer. *Id.* at 78, 656 N.E.2d at 1002. Other courts have also held that the FTC holder clause creates vicarious liability for the creditor, even where the creditor might be exempt from personal liability, or else "[w]hat could possibly be the point of a notice preserving 'claims and defenses which the debtor could assert against the seller' if it intended to preserve to the debtor only those claims and defenses which the debtor could assert against the creditor?" *Gill v. Fid. Fin. Serv., Inc.* (Ala.1993), 631 So.2d 913, 914.

Ohio courts have generally recognized the validity of such claim preservation provisions and permitted debtors to assert any claim or defense against the

5. In dicta, the Ohio Supreme Court states that "[a]lthough not raised by the parties on appeal, we note our agreement with the lower courts that, because Bank One is a financial institution under R.C. 5725.01(A), *the transaction at issue* is excepted from application of the Ohio Retail Installment Sales Act by R.C. 1317.01(P) and the Ohio Consumer Sales Practices Act by R.C. 1345.01(A)." (Emphasis added.) *Blon v. Bank One,* 35 Ohio St.3d at 100, 519 N.E.2d at 367, fn. 3.

6. Bank One states that reliance on *Nations Credit* is misplaced, because it involves a different type of retail transaction and because it is a decision of the Second District Court of Appeals, which is not binding on this court. We question, then, why we are expected to give greater credence to *Vannoy,* the Fourth District case that forms the primary basis for Bank One's position.

assignee of the contract that could have been asserted against the seller. *Cox v. First Natl. Bank of Cincinnati* (S.D.Ohio 1986), 633 F.Supp. 236, 239; see, also, *Hardeman v. Wheels, Inc.* (1988), 56 Ohio App.3d 142, 145, 565 N.E.2d 849, 852–853; *Provident Bank v. Barnhart* (1982), 3 Ohio App.3d 316, 318, 3 OBR 370, 371–372, 445 N.E.2d 746, 748–749. This court has held that the inclusion of the FTC holder language also creates an agreement in contract, stating that "by both contract and statute, any claims or defenses which the debtor could assert against the seller are also valid defenses against the holder of the installment agreement." *Gen. Motors Acceptance Corp. v. Grady* (1985), 27 Ohio App.3d 321, 324, 27 OBR 378, 382, 501 N.E.2d 68, 72.

The clear implication of the language in the FTC clause is that Bank One, as the holder of a consumer credit contract, is subject to *any* defense which appellant could assert against the dealer. Appellant is not attempting to hold Bank One accountable as a "financial institution"; rather, he is asserting a claim concerning a consumer transaction based upon the actions of the seller of the goods. See *Nations Credit v. Pheanis*, 102 Ohio App.3d at 78, 656 N.E.2d at 1002. Thus, while Bank One may not be subject to the CSPA for its own actions toward appellant, it agreed to be derivatively liable for the dealer's violations of the CSPA when it accepted the terms of the contract.

Bank One based its motion for dismissal entirely upon the premise that a financial institution could not be held liable for any violations of the CSPA. It did not address the fact that appellant articulated several other causes of action in his complaint, unrelated to the CSPA, which are applicable to Bank One either directly or under a derivative theory of liability.

In Count I, item 5(w), appellant states:

"The loan application that was presented to [Appellant] for his signature was blank and the defendant Bank One or [the dealer] after the Plaintiff left and without ever obtaining his consent filled out the interest rate on the installment contract to be 16.15 percent.  * * *"

If this fact is true, which we must assume it is for our purposes in reviewing a Civ.R. 12(B)(6) motion, Bank One would also be implicated for claims arising out of violations of the Truth-in-Lending Act, Section 1601 *et seq.*, Title 15, U.S.Code ("TILA"). The TILA, which was referred to in appellant's Count I, item (9)(i), requires a meaningful disclosure of credit terms to enable the consumer to compare various options available and to avoid the uninformed use of credit and unfair credit practices. *Hamilton v. Ohio Sav. Bank* (1994), 70 Ohio St.3d 137, 139, 637 N.E.2d 887, 888–889.

Appellant also enumerated complaints alleging forgery (Count I, item 10), lack of contract (Count I, item 14), and fraud (Count II). Thus, even if Bank One

was exempt from liability under the CSPA, it would still be accountable for other claims.

Based on the above, we cannot say that there is no cause of action alleged against Bank One. Appellant's first assignment of error is sustained.

Appellant's second and third assignments of error assert that the trial court abused its discretion when it denied appellant's motion for reconsideration, leave to amend, injunction and oral argument, and that dismissal of Bank One from this case is against public policy. Based upon our disposition of the first assignment of error, these issues are moot and need not be addressed. See App.R. 12(A)(1)(c).

Appellant's first assignment of error is well taken. We reverse the trial court's dismissal of appellant's complaint against Bank One and remand for further proceedings.

*Judgment reversed*
*and cause remanded.*

REECE, P.J., and DICKINSON, J., concur.