INFORMATION LEASING CORPORATION, Appellant,

v.

PALL, INC., d.b.a. Bollinger's Mobil, Appellee, et al.

[Cite as *Info. Leasing Corp. v. Pall, Inc.*, 156 Ohio App.3d 378, 2004-Ohio-1014.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030593.

Decided March 5, 2004.

William P. Coley II and Jeremy Richard, for appellant.

GORMAN, Judge.

{¶ 1} This appeal is brought by Information Leasing Corporation, the plaintiff-appellant, in an action for breach of a commercial lease by the defendant-appellee, Pall, Inc., doing business as Bollinger's Mobil, and Phillip D. Bollinger (who subsequently sought bankruptcy protection). The trial court awarded a default judgment to ILC, but only in the amount of $999.64 instead of the requested $6,397.79. In its single assignment of error, ILC now argues that the

trial court erred when it failed to award it the present value of future payments due under the lease. On the basis of our decision in *Info. Leasing Corp. v. USA Forms, Inc.*, 1st Dist. Nos. C–030308 and C–030332, 2003-Ohio-6920, 2003 WL 22976543, we reverse.

{¶ 2} The present action is one of many involving ILC that have come before us recently. The actors have been ILC, a company called Credit Card Corporation, and a lessee in breach. The object of the lease in all these cases was an ATM owned by ILC and leased usually to a small business or businessperson. CCC, the *éminence grise* in these scenarios, was in the business of locating small businesses interested in having an ATM on their premises and then promising the business owners that it would service the ATMs and pay the business owners handsome commissions. The business owners saw an opportunity to provide their customers with cash on hand and also to derive extra revenue from the ATM.

{¶ 3} As part of each transaction, CCC would arrange for the small business to sign, usually with the personal guarantee of the business owner, an ILC finance lease with a "hell or high water clause," meaning that the lease was noncancelable. The lessee would sign the lease without either properly reading it—the ILC lease expressly and conspicuously stated that it was noncancelable—or being aware of its ironclad nature. Usually the lessee claimed that the lease was presented by CCC as a mere formality for obtaining the ATM, thus giving rise to a claim that the lessee was deceived into signing it. Only after CCC went bankrupt and left the lessee holding an ATM it no longer wanted (apparently without the favorable terms promised by CCC, none of the businesses was interested in keeping the ATM and having it serviced by another company) did the lessee fully appreciate that it was a party to a noncancelable lease. That did not prevent the lessee, however, from stopping any further rent payments and notifying ILC that it should come and pick up its ATM. This repeated scenario, as noted, has generated a spate of litigation as ILC has sought damages for the breach of its finance leases.

{¶ 4} As a consequence, this court has now developed a substantial body of law concerning finance leases in general, and specifically the ILC lease in question. In *Info. Leasing Corp. v. GDR Investments, Inc.*, 152 Ohio App.3d 260, 2003-Ohio-1366, 787 N.E.2d 652, we initially discussed the nature of finance leases, the one-sidedness of hell-or-high-water clauses, their authorization under the Uniform Commercial Code, R.C. 1310.46, and the several defenses still available to lessees, including unconscionability, lack of acceptance, and consent to cancellation. Subsequently, in *Info. Leasing Corp. v. Chambers*, 152 Ohio App.3d 715, 2003-Ohio-2670, 789 N.E.2d 1155, we held that, notwithstanding the hell-or-high-

water clause's ironclad nature, and even in the face of an acceleration clause, the lessor was still obligated to mitigate damages.

{¶ 5} Specifically, when the lessor retakes and resells the goods, the lessor is entitled to damages in accordance with R.C. 1310.74(A). Under R.C. 1310.74(A), the lessor is entitled to all past unpaid rent due to the date of repossession or the date of tender by the lessee. In this manner, the lessor is given his restitutionary interest. The section next provides for the lessor's expectancy interest. The lessor is to be awarded the present value [1] of the rent payments still due under the remaining term of the lease from either the date of default or repossession—but only to the extent that the present value of the rent specified in the lease exceeds the present value of the market rent calculated over the same lease term. Market rent is generally determined according to the prevailing rent at the date of repossession or the date of tender, or if no prevailing rate is available at those times, then within a reasonable time before or after. See R.C. 1310.53(A) and (B). In other words, the lessor is given the expectancy of future rents only above what he would have made had he repossessed the ATM and re-rented it at the market rate. In this respect, the UCC applies its own mitigation theory. Finally, the lessor is entitled to any "incidental damages allowed under section 1310.76 of the Revised Code, less expenses saved in consequence of the lessee's default." We discussed this damage equation at length in *Chambers,* supra, and again in *Info. Leasing Corp. v. Borda,* 1st Dist. Nos. C–020725 and C–020750, 2003-Ohio-4834, 2003 WL 22103377.

{¶ 6} Ongoing confusion concerning the proper measure of damages is understandable, however. Most recently, and only after the trial court's decision and judgment, we found it necessary to revisit our own language in *Chambers,* making clear that the expectancy formula was the present value of the future rent due under the remaining lease term minus the present value of the market rent over the same term. *Info. Leasing Corp. v. USA Forms, Inc.,* supra. We specifically rejected a formula that used the proceeds of a resold ATM as a substitute for the present value of the market rent. As noted, the measure of expectancy damages is the amount of rent due under the remaining length of the lease to the extent it exceeds the market rent calculated over the same term.

{¶ 7} Here, ILC repossessed the ATM and elected to resell it rather than to re-lease it. The damages to which it was entitled, therefore, included first the amount of any unpaid rent up until the date of repossession or tender. Next, ILC was entitled to its expectancy—i.e., the present value of future rent due under the lease minus the present value of the market rent over the same lease

---

**1.** "Present value" is statutorily defined in R.C. 1310.01(A)(21).

term. Finally, it was due any provable incidental damages under R.C. 1310.74(A).

{¶ 8} The trial court awarded $538 in unpaid rent up to the time Bollinger's Mobil tendered the ATM, which was correct, plus additional damages for late charges, unpaid taxes due under the lease, and process/risk fees. The court then erred, however, by not awarding the present value of future rent minus the present value of the market rent over the term of the lease. Instead, it appears to have simply awarded the difference between the residual value of the ATM minus the amount obtained by ILC on resale. As will be discussed, although the proceeds of the resale were relevant to the calculation of damages resulting from Bollinger's Mobil's breach of the purchase agreement at the end of the lease, it was not relevant to the damage equation for the rent obligation. By not awarding ILC's expectancy with respect to future rent, the court greatly reduced ILC's proper recovery. In addition to the amount of $538 for past unpaid rent plus the incidental damages set forth, the court should have awarded the statutory calculation of the present value of future rent minus the present value of the market rent over the term of the lease.

{¶ 9} There is an additional component of the damages in this case that must be addressed and distinguished from those associated with the damages for unpaid past due and future rent. In addition to its rent obligation under the lease, Bollinger's Mobil signed not just a purchase option, but a purchase agreement by which it obligated itself to buy the ATM at a certain price at the termination of the lease. The purchase price was added to the damages prayed for by ILC, and then that amount was reduced by the proceeds of the sale of the ATM after ILC repossessed it. The difference between the agreed price for the purchase of the ATM and the amount realized at sale would be available to ILC as damages for the breach of the purchase agreement, provided that the resale was made in good faith and in a commercially reasonable manner. See R.C. 1302.80(A). Additionally, ILC would be entitled to any incidental damages allowed under R.C. 1302.84. Id.

{¶ 10} Accordingly, we reverse the trial court's damage award in part and remand this case for a determination of the present value of ILC's rent under the remaining term of the lease and a subtraction from that of the present value of the market rent over the same term. This amount should then be awarded to ILC along with the other damages specified.

Judgment reversed in part
and cause remanded.

HILDEBRANDT, P.J., and PAINTER, J., concur.