OPINION
{¶ 1} Defendant-appellant, Elearea Roberts, appeals a decision of the Hardin County Municipal Court, granting summary judgment in favor of the plaintiff-appellee, Fifth Third Bank. Roberts contends that summary judgment was improper because material issues of fact remain unresolved. She also claims the trial court wrongfully calculated the interest rate on the damages that it awarded to Fifth Third Bank.
 {¶ 2} After reviewing the entire record before us, we find that material issues of fact remain concerning Fifth Third Bank's standing to bring suit against Roberts based upon the lease in question and the reasonableness of the manner in which Fifth Third Bank disposed of Roberts' vehicle. Furthermore, we also find that the trial court wrongfully assessed an interest rate against Roberts that was contrary to law. Accordingly, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
 {¶ 3} In July of 2000, Roberts entered into a "motor vehicle closed-end lease agreement" with Fifth Third Auto Leasing Trust on a 1999 Oldsmobile Cutlass Sedan with 28,318 miles. Roberts purchased the car through Key Oldsmobile car dealership. During the sale of the car, the dealership allegedly provided Roberts with an express warranty. Roberts claims the dealership told her that if anything went wrong with the vehicle she could "bring it back and we'll take care of it. [The dealership] stand[s] behind the car." (Affidavit of Elearea Roberts, p. 1.)
 {¶ 4} Under the terms of the lease, the stated value of the car at the time of signing was $14,857.50. Roberts agreed to pay $290.20 per month for sixty months, which, coupled with the money due at signing, resulted in a total payment of $17,700.00. The lease also contained an option for Roberts to purchase the vehicle at the end of the sixty months for $5,075.00. The stated depreciation of the vehicle over the five year term of the lease was $11,277.50. Additionally, the lease defined the extent of the dealership's authority to make binding representations on behalf of Fifth Third Auto Leasing Trust. It also described the lessor's rights in the event that Roberts defaulted.
 {¶ 5} Thereafter, sometime around the beginning of May 2002, Roberts began experiencing problems with the automobile. Consequently, she took the car back to Key Oldsmobile for repairs pursuant to what she considered to be an express warranty. However, the dealership allegedly refused to fix the vehicle. In response to this refusal, Roberts returned the vehicle to Key Oldsmobile and stopped making the payments on her lease. Both parties herein agree that this constituted a default under the terms of the lease.
 {¶ 6} On May 14, 2002, Roberts received a letter from Fifth Third Bank indicating that she had defaulted on the lease and that her vehicle was going to be sold at a private sale sometime after May 31, 2002. Subsequently, the vehicle was sold at a private auction for $5,100.00. The mileage on the vehicle at the time of the sale was 63,075. Prior to default, Roberts had paid $4,780.00 in monthly installments under the lease.
 {¶ 7} On March 5, 2003, Fifth Third Bank initiated a civil action against Roberts to recover $8,706.88, which is the alleged amount remaining under the lease minus proceeds from the sale and payments already made. Fifth Third Bank filed a motion for summary judgment on February 4, 2004, and a hearing was held on that motion on March 16, 2004. Because of a malfunction in the recording equipment at the trial court level, the electronic recordings of that summary judgment hearing were lost. Therefore, it was necessary for the parties to file a joint stipulation of facts under App.R. 9(C) so that this Court could identify what issues had been raised at the summary judgment hearing.
 {¶ 8} According to the joint stipulation of facts, Roberts argued at the hearing that summary judgment was improper because: (1) the lease was actually a security interest and was governed by R.C. 1309; (2) Fifth Third Bank did not have standing to recover damages under the lease because the name of the lessor on the lease was Fifth Third Auto Leasing Trust; (3) Fifth Third Bank was not a holder in due course and, as such, was subject to all of the defenses that Roberts could have raised against the seller; (4) Fifth Third Bank had failed to take appropriate actions to ensure a commercially reasonable sale and mitigate damages; (5) Fifth Third Bank was only entitled to interest at the rate of 10%.
 {¶ 9} Fifth Third Bank responded to Roberts' arguments by agreeing that it may not be entitled to interest at the rate of 21%, but that it was at least entitled to interest at the rate of 10% on the principle amount due of $8,706.88. Fifth Third Bank also claimed that the transaction was a lease, not a loan nor a secured transaction, and that R.C. 1309 was not applicable because the matter was governed by R.C. 1310.
 {¶ 10} Following the oral arguments, the trial court granted Fifth Third Bank's motion for summary judgment "in the principal balance of $8,706.88 together with accrued interest of $1,803.40 through June 12, 2003 and interest thereafter on the principal balance at the rate of 21.00% per annum and costs." From this judgment Roberts appeals, presenting two assignments of error for our review.
 Assignment of Error I The trial court erred in granting summary judgment against thedefendant as there are genuine issues of material fact.
 Assignment of Error II Whether the trial court's assessed damage calculationincluding interest exceeds the maximum rate allowed by law.
 Assignment of Error I {¶ 11} In her first assignment of error, Roberts asserts that the trial court erred in granting Fifth Third Bank's summary judgment motion because material issues of fact remain. Specifically, Roberts maintains that a material issue of fact remains concerning Fifth Third Bank's standing to recover damages under a lease signed by Fifth Third Auto Leasing Trust. She also raises four other sub topics, which can be grouped into two main issues: (1) whether the legal relationship between Fifth Third Bank, Roberts, and Key Oldsmobile allows Roberts' alleged defenses against the dealership to be imputed to Fifth Third Bank; and (2) whether Fifth Third Bank properly disposed of Roberts' vehicle.
 Standard of Review {¶ 12} An appellate court reviews a summary judgment order de novo. Hillyer v. State Farm Mut. Auto. Ins. Co. (1999),131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. DaytonHeidelberg Distr. Co., 148 Ohio App.3d 596, 2002-Ohio-3932, at ¶25, citing State ex rel. Cassels v. Dayton City School Dist. Bd.of Ed. (1994), 69 Ohio St.3d 217, 222. Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. HarwickChemical Corp. (1995), 73 Ohio St.3d 679, 686-687. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,358-59.
 {¶ 13} The party moving for the summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. Stateex rel. Burnes v. Athens City Clerk of Courts (1998),83 Ohio St.3d 523, 524; see, also, Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 Standing {¶ 14} Roberts executed a lease of the subject vehicle with Fifth Third Auto Leasing Trust. That entity is not a party to the action, and there is no evidence that Fifth Third Bank is a proper successor in interest to Fifth Third Auto Leasing Trust. Without such evidence, Fifth Third Bank has no standing to bring suit against Roberts seeking to enforce a lease entered into by Fifth Third Auto Leasing Trust. "A party lacks standing to invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action." State ex rel. Dallman v. Court of Common Pleas,Franklin County (1973), 35 Ohio St.2d 176, at the syllabus.
 {¶ 15} A review of the record clearly reveals that Roberts raised the issue of Fifth Third Bank's standing at both the trial and appellate court levels. Therefore, the issue is properly before this Court. Moreover, a review of the record also reveals no evidence proving that Fifth Third Bank has standing to enforce a lease on behalf of Fifth Third Auto Leasing Trust, or that the trial court even addressed the issue of standing. While there is some circumstantial evidence in the record tending to show that Fifth Third Bank had the authority to enforce the lease,[1]
it is undisputed that the only name under lessor on the lease agreement signed by Roberts was Fifth Third Auto Leasing Trust. Moreover, Fifth Third Bank is mentioned nowhere in the lease. Interestingly, Fifth Third Bank never addresses this issue, either at the summary judgment hearing or in its appellate brief, even to argue that standing is proper.
 {¶ 16} Absent some sort of independent evidence that Fifth Third Bank has standing to enforce the lease on behalf of Fifth Third Auto Leasing Trust, a material issue of fact remains regarding whether Fifth Third Bank is a real party in interest with standing. Therefore, summary judgment was improper.
 {¶ 17} With that result, Roberts' other arguments and her second assignment of error need not be addressed. However, in the event that Fifth Third Bank does prove its standing, and in the interests of judicial economy, we elect to deal with all of Roberts' issues in the current opinion.
 Imputed Defenses CSPA {¶ 18} Roberts contends that Fifth Third Bank is derivatively liable under R.C. 1345.01 et seq., the Consumer Sales Practices Act (CSPA), for the wrongful actions of Key Oldsmobile dealership that occurred in connection with the sale of her automobile. She maintains that she should be able to raise the same defenses against Fifth Third Bank that could raise against Key Oldsmobile. She bases this claim on a line of Ohio cases discussing the affect of the Federal Trade Commission's (FTC) holder rule on the CSPA.
 {¶ 19} The CSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1345.02(A). The definition of "consumer transaction" in the CSPA excludes transactions between certain classes of persons and their customers. R.C. 1345.01(A). Transactions involving financial institutions and their customers are among those classes exempt from the prohibitions of the CSPA. Id.; R.C. 5725.01(A). It is undisputed that Fifth Third Bank is a financial institution as defined in R.C. 5725.01(A). Therefore, the lease in question, which is a transaction between Fifth Third Bank and its customer, Roberts, is outside of the scope of the CSPA. However, Ohio courts have held that the holder of a commercial credit contract that is otherwise exempt from liability under the CSPA can be held derivatively responsible for the actions of the original seller of the goods under the FTC holder rule. Milchen v. Bob Morris Pontiac-GMC Truck (1996),113 Ohio App.3d 190, 197. It is under this exception to the CSPA that Roberts makes her argument.
 {¶ 20} The FTC holder rule is codified in FTC regulation16 C.F.R. 433.2, which provides in relevant part:
In connection with any sale or lease of goods or services toconsumers, in or affecting commerce as "commerce" is defined inthe Federal Trade Commission Act, it is an unfair or deceptiveact or practice . . . for a seller, directly or indirectly, to:(a) Take or receive a consumer credit contract which fails tocontain the following provision in at least ten point, bold face,type:
 NOTICE Any holder of this consumer credit contract is subject to allclaims and defenses which the debtor could assert against theseller or goods or services obtained pursuant hereto or with theproceeds hereof. recovery hereunder by the debtor shall notexceed amounts paid by the debtor hereunder.
 {¶ 21} This holder rule "is designed to abrogate the holder-in-due-course doctrine in order to protect consumers when purchasing goods or services on credit." Milchen,113 Ohio App.3d at 195. In applying this rule to a financial institution that had been deemed exempt from the CPSA, the Ninth District stated that:
The clear implication of the language in the FTC clause isthat Bank One, as the holder of a consumer credit contract, issubject to any defense which appellant could assert againstthe dealer. Appellant is not attempting to hold Bank Oneaccountable as a "financial institution"; rather, he is assertinga claim concerning a consumer transaction based upon the actionsof the seller of the goods. Thus, while Bank One may not besubject to the CSPA for its own actions toward appellant, itagreed to be derivatively liable for the dealer's violations ofthe CSPA when it accepted the terms of the contract.
 Milchen, 113 Ohio App.3d at 197 (internal citation omitted).{¶ 22} Roberts claims that this same rationale should apply to her situation and that Fifth Third Bank should be held derivatively liable for the actions of Key Oldsmobile. However, she fails to fully appreciate the case law creating this exception to the CSPA. The line of cases discussing the FTC holder rule involve a situation where the bold face language required by 16 C.F.R. 433.2 was included in the contract. Therefore, the courts reasoned that the holder rule had become a part of the contract and was agreed upon by the financial institution. In the case sub judice, however, no such language was included in the disputed lease. Accordingly, the FTC holder rule never became an agreed upon part of the lease.
 {¶ 23} Nevertheless, Roberts claims that 16 C.F.R. 433.2
required the holder rule to be included in the lease and that the absence of this language constituted an unfair and deceptive trade practice on the part of Fifth Third Bank. She contends that Fifth Third Bank should not be exempt from derivative liability merely because it failed to include the required holder rule language in its lease. However, because we find that the lease is not a consumer credit contract and, therefore, that the FTC holder rule was not a required part of the contract, we need not discuss whether a financial institution can be held liable for the derivative actions of the seller where the FTC holder rule has been wrongfully omitted from a contract.
 {¶ 24} 16 C.F.R. 433.2 requires the FTC holder rule language to be included only in a "consumer credit contract." Accordingly, the lease herein must be a consumer credit contract to require the inclusion of the FTC holder rule.
 {¶ 25} Consumer credit contract is defined as: "Any instrument which evidences or embodies a debt arising from a `Purchase Money Loan' transaction or a `financed sale' as defined in paragraphs (d) and (e) of this section." 16 C.F.R. 433.1(i). Subsection (d) defines "purchase money loan" as:
A cash advance which is received by a consumer in return for a`financing charge' within the meaning of the Truth in Lending Actand Regulation Z, which is applied, in whole or substantial part,to a purchase of goods or services from a seller who (1) refersconsumers to the creditor or (2) is affiliated with the creditorby common control, contract, or business arrangement.16 C.F.R. 433.1(d).
 {¶ 26} The code defines "financed sale" as: "Extending credit to a consumer in connection with a `credit sale' within the meaning of the Truth in Lending Act and Regulation Z."16 C.F.R. 433.1(e). "Credit sale" is defined as:
A sale in which the seller is a creditor. The term includes abailment or lease (unless terminable without penalty at any timeby the consumer) under which the consumer: (i) Agrees to pay ascompensation for use a sum substantially equivalent to, or inexcess of, the total value of the property and services involved;and (ii) will become (or has the option to become), for noadditional consideration or nominal consideration, the owner ofthe property upon compliance with the agreement.12 C.F.R. 226.2(16).
In the case sub judice, we find that the lease between Roberts and Fifth Third Bank did not involve either a "purchase money loan" or a "financed sale."
 {¶ 27} There is no evidence in the record before us that Roberts received a cash advance in exchange for a financing charge and applied that money towards the purchase of the Oldsmobile. Nor is there any evidence of a contract or business arrangement between Fifth Third Bank and the dealership. Accordingly, we find that the lease was not a "purchase money loan" as contemplated by 16 C.F.R. 433.1(d).
 {¶ 28} Likewise, the lease does not embody a "financed sale" because there was no credit sale involved in the transaction. In other words, Roberts would not have become the owner of the vehicle for "no additional consideration or nominal consideration." In fact, the lease agreement itself states that Roberts can only become the owner of the vehicle at the end of the lease if she pays $5,075.00. Given her monthly payment amount over the sixty month period and the car's estimated value in the beginning and at the end of the lease, this Court cannot determine that $5075.00 is a nominal amount of consideration.
 {¶ 29} Viewing the facts in a light most favorable to Roberts, this Court finds that no genuine issues of material fact exist as to whether the lease is a consumer credit contract within the definition provided by the FTC regulations. Thus, we find that the FTC holder rule does not apply to this lease and Fifth Third Bank is exempt from liability under the CSPA. Accordingly, Roberts can not raise defenses she has against Key Oldsmobile against Fifth Third Bank.
 Express Warranty {¶ 30} In this argument, Roberts contends that genuine issues of material fact exist concerning whether Fifth Third Bank violated its duty of good faith. R.C. 1301.09 imposes on parties to a lease an obligation of good faith in the performance of that lease. "Good faith" is defined as "honesty in fact in the conduct or transaction concerned." R.C. 1301.01(S). Both a lessor and a lessee have a duty to act in good faith and honor the terms of a contractual obligation.
 {¶ 31} Roberts' claim of a good faith violation is based upon an alleged express warranty that she maintains Key Oldsmobile gave her at the time of the sale.[2] She asserts that the alleged express warranty is a part of the lease contract. Therefore, Roberts claims Fifth Third Bank violated its duty of good faith when Key Oldsmobile violated the alleged express warranty.
 {¶ 32} Furthermore, Roberts maintains that the breach of the alleged express warranty entitled her to return the vehicle to Key Oldsmobile and to stop making payments on the lease. On the contrary, Fifth Third Bank contends that this issue may not be raised on appeal because it was not raised in the trial court. However, even assuming that this issue is properly before this Court, Fifth Third Bank asserts that any express warranty created by the dealership would be unenforceable against the bank.
 {¶ 33} A review of the lease clearly indicates that Fifth Third Bank did not warrant the vehicle and, furthermore, that Key Oldsmobile was not authorized to make any warranties on behalf of Fifth Third Bank. The lease states, in capitalized letters and in plain-view that the "lessor makes no warranty or representation, either express or implied as to the design, model year, operation or condition of, or as to the quality of material, or workmanship in the vehicle." Moreover, the lease also states that "[t]he entity arranging this Lease is authorized to execute this Lease on behalf of the Lessor. Neither that entity nor any of its employees is authorized to make any oral or written promise, affirmation, warranty or representation to Lessee." It is our conclusion, therefore, that the lease contains no warranty. Thus, we find this argument to be without merit.
 The Vehicle's Disposition U.C.C. Article 9 {¶ 34} Here, Roberts argues that Fifth Third Bank's disposition of the vehicle after her default was commercially unreasonable under Ohio's version of U.C.C. Article 9, R.C.1309.101 et seq. She insists that R.C. 1309 applies because the contract that she signed was actually a security interest disguised as a lease.
 {¶ 35} R.C. 1301.01(KK), which applies to R.C. 1309, provides in pertinent part:
* * *
(2) Whether a transaction * * * creates a lease or securityinterest is determined by the facts of each case; however, atransaction creates a security interest if the right topossession and use of the goods is an obligation for the term ofthe lease not subject to termination by the lessee and if any ofthe following apply:
 (a) The original term of the lease is equal to or greater thanthe remaining economic life of the goods.
* * *
(d) The lessee has an option to become the owner of the goodsfor no additional consideration or nominal consideration uponcompliance with the lease agreement.
 (3) A transaction does not create a security interest merelybecause it provides any of the following:
* * *
(c) That the lessee has an option to renew the lease or tobecome the owner of the goods;
* * *
(e) That the lessee has an option to become the owner of thegoods for a fixed price that is equal to or greater than thereasonably predictable fair market value of the goods at the timethe option is to be performed.
 (4) For purposes of division (KK) of this section, all of thefollowing apply:
 (b) Additional consideration is not nominal if, when theoption to renew the lease is granted to the lessee, the rent isstated to be the fair market rent for the use of the goods forthe term of the renewal determined at the time the option is tobe performed or, when the option to become the owner is grantedto the lessee, the price is stated to be the fair market value ofthe goods determined at the time the option is to be performed.Additional consideration is nominal if it is less than thelessee's reasonably predictable cost of performing under thelease agreement if the option is not exercised.
* * *
 {¶ 36} In Delker v. Kerr, the Sixth District Court of Appeals, citing several bankruptcy decisions, determined that:
The actual intent of the parties is a determinative factor indeciding whether an agreement is a mere lease or a securityagreement but if this intent is unclear from the surroundingcircumstances to the transaction or the parties' later treatmentof the relationship, it may be inferred from the rights andobligations the supposed lessee has at the termination of thecontract. For example, whether the lessee may realisticallyreturn the property to the lessor without further obligation oris compelled by either the lease or economic practicality to keepand pay for it. If, as in the present case, the lease providesthat at its end the lessee is deemed the owner of the property ormay become such by paying a nominal consideration, the onlylogical legal conclusion is that the "lease" is intended forsecurity in a transaction that is actually a disguisedinstallment purchase contract.
 Delker v. Kerr (Sept. 20, 1996), 6th Dist No. L-96-110 (internal citations omitted).
 {¶ 37} The Delker court found that, based on the facts of the case, the intent of the parties was to form a lease. The court relied on the fact that the lease explicitly stated the consequences of default and that the lessee's signature served as knowledge of the lease's terms. Finally, the court stated that
It has been held that the most important factor in decidingwhether a disputed transaction is a true "lease" or "securityagreement" under Ohio law is the existence of an option topurchase leased property for little or no consideration. In thepresent case, the consideration was a substantial amount of moneyto be deposited as the down payment.
 {¶ 38} Applying the logic from Delker and the statutory language of R.C. 1301.01(KK) to the case sub judice, the evidence does not indicate a genuine issue of material fact as to whether the lease was actually a security agreement. It was clearly the intent of the parties to enter into a lease. Placing aside all the references to the word "lease" in the agreement, Roberts signed the agreement, which explicitly enumerated the consequences of a default. Moreover, and perhaps most importantly, Roberts signed the agreement knowing that she would have the option to purchase the vehicle for $5075.00 at the end of the lease. As stated above, we do not find this to be a nominal amount of consideration.
 {¶ 39} Based on the above reasoning, reasonable minds could not conclude that the lease was actually a security interest. Thus, the transaction between Fifth Third Bank and Roberts was not a secured transaction governed by Ohio's version of U.C.C. Article 9, and Roberts' arguments that rely on R.C. 1309 are without merit.
 Non U.C.C. Disposition {¶ 40} Roberts next argues that independent of U.C.C. Article 9, Fifth Third Bank failed to dispose of the vehicle in a commercially reasonable manner. More specifically, Roberts contends that Fifth Third Bank failed to mitigate its damages. For authority, Roberts cites Provident Bank v. Barnhart (1982),3 Ohio App.3d 316 and the cases cited therein. In response, Fifth Third Bank contends that Roberts' reliance on Barnhart is incorrect because it involved a secured transaction. Moreover, Fifth Third Bank suggests that because U.C.C. Article 9 does not govern this instrument, then no duty to mitigate damages exists.
 {¶ 41} In Barnhart, the court held that the judgment against a holder of a retail installment contract for the purchase of a vehicle was limited by the doctrine of avoidable consequences. Id. at 320. That doctrine requires the claimant to exercise reasonable, practical care and diligence to avoid excessive damages. Id. The court stated that, "Provident was not entitled to recover damages that it could reasonably have avoided by realizing * * * the value of the security held by it. The doctrine of avoidable consequences requires only reasonable, practical care and diligence, not extraordinary measures to avoid excessive damages." Id. (internal citations omitted). To reach this proposition, Barnhart carefully analyzed other types of commercial transactions where the lessee had defaulted and the lessor sued for damages. Id.
 {¶ 42} While R.C. 1310.74 provides the proper formula in calculating the exact amount of damages for the resale of a vehicle after a lease default, the Revised Code does not require any specific means for disposing of a vehicle. However, it is our conclusion that the resale itself must be performed in a commercially reasonable manner consistent with the general mandate of the U.C.C. See, R.C. 1310.69; 1310.73; 1310.74; R.C.1302.80(A); First Nat'l Bank v. Cianelli (1991),73 Ohio App.3d 781, 790-91; Information Leasing Sys. v. Pall (2004),156 Ohio App.3d 378, 381-82.
 {¶ 43} U.C.C. Article 2A requires a lessor to re-lease a repossessed vehicle in good faith and in a commercially reasonable manner. R.C. 1310.73(B). General contract law, which includes leases, similarly requires that goods be resold in good faith and in a commercially reasonable manner. R.C.1302.80(A). Furthermore, in Cianelli, the Twelfth District held that the resale of a leased vehicle must be done in good faith and in a commercially reasonable manner consistent with U.C.C. Article 9.[3] Cianelli, 73 Ohio App.3d at 791.
 {¶ 44} As in the case sub judice, the default on the lease inCianelli arose out of a mechanical problem with the car, and the lessee believed that the lessor was responsible for fixing it. Id. Because the lessee withheld payments, the bank repossessed the vehicle and sold it at an auction to the "highest bidder." Id. at 791. The lessee contended that the resale was not done in a commercially reasonable manner, but the court disagreed. In its conclusion, the court stated that U.C.C. Article 9 required commercial reasonableness when disposing of collateral after default. Id. Applying that reasoning, the court found that the resale of the vehicle after the lessee defaulted was commercially reasonable even though the car was sold without an engine. Id.
 {¶ 45} Viewing Cianelli, R.C. 1310.73(B), general contract law resale principles (namely R.C. 1302.80), U.C.C. Article 2A re-leasing procedures, and U.C.C. Article 9 together, we conclude that when a lessor takes possession of goods after default and decides to resell the goods in conformity with R.C. 1310.69, et. seq., the resale must be done in good faith and in a commercially reasonable manner. The sale may be made at any time or place and on any terms, but all aspects of the disposition must be commercially reasonable. See, R.C. 1309.47; 1309.50(B). However, price alone does not determine whether a sale is commercially reasonable. Huntington Nat'l Bank v. Elkins (1990),53 Ohio St.3d 79, syllabus. "The focus is not on the proceeds but on the procedure used." Cianelli, 73 Ohio App.3d at 791, citingElkins, 53 Ohio St.3d at 81.
 {¶ 46} Viewing the facts before us in a light most favorable to Roberts, we find that the record does not reflect whether the resale of the vehicle was in good faith and commercially reasonable. The record indicates only that Roberts was notified that the vehicle was going to be resold at a private sale after May 31, 2002 and that the vehicle was in fact subsequently resold for $5,100.00. Nothing in the record details the manner, time, place, or terms of the resale. Without a more developed record, we find that a genuine issue of material fact exists as to whether the resale of Roberts' vehicle was commercially reasonable.
 {¶ 47} Accordingly, we find that material issues of fact remain concerning Fifth Third Bank's standing to enforce the lease against Roberts and whether the resale of Roberts' vehicle was done in a commercially reasonable manner. On these issues only, Roberts' first assignment of error is sustained. In all other aspects, the assignment is overruled.
 Assignment of Error II {¶ 48} In her second assignment of error, Roberts alleges that the trial court erred by imposing a 21% interest rate on the damages awarded to Fifth Third Bank. Instead, she contends that the trial court should have imposed an interest rate of 10%.
 {¶ 49} Under the version of the Ohio Revised Code applicable herein,[4] "when money becomes due and payable upon any . . . instrument of writing . . . verbal contracts . . . and upon all judgments . . . of any judicial tribunal for the payment of money arising out of . . . a contract or other transaction, the creditor is entitled to interest at the rate of ten percent per annum, and no more, unless a written contract provides adifferent rate of interest. . . ." R.C. 1343.03(A) (emphasis added).
 {¶ 50} The lease herein states that monetary damages arising from the lessor's default "shall be due and payable upon demand and shall bear interest at the maximum rate permitted by law."
 {¶ 51} Since the interest rate provided for in the contract is the maximum rate governed by law, and the lease does not provide a specific rate, we find that the trial court erred by assessing a 21% interest rate, instead of the 10% rate provided for in R.C. 1343.03(A). Thus, Roberts' second assignment of error is sustained.
 {¶ 52} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment Reversed and Cause Remanded.
 Cupp and Rogers, J.J., concur.
[1] For example, in her answer, Roberts admits that she created a lease with Fifth Third Bank. Furthermore, Roberts received several default notice letters from Fifth Third Bank on Fifth Third Bank letterhead. Next, an affidavit from Fifth Third Bank authorized by the record keeper states that Roberts entered into a lease agreement with Fifth Third Bank, and, subsequently, defaulted on the lease with the bank. However, we find that this circumstantial evidence is not enough to prove that Fifth Third Bank actually has the authority to enforce a contract on behalf of Fifth Third Auto Leasing Trust. Especially since Fifth Third Bank has declined to address the issue of standing.
[2] We will not address the issue of whether the dealership actually gave an express warranty to Roberts because that issue is not before this Court.
[3] The Cianelli court did not explain its rationale of why Article 9 governed this disposition.
[4] The current version of R.C. 1343.03(A), which became effective on June 6, 2004, states that "the creditor is entitled to interest at the rate per annum determined pursuant to section5703.47 of the Revised Code."