NATIONS CREDIT, Appellee,

v.

PHEANIS, Exr., Appellant, et al.

[Cite as *Nations Credit v. Pheanis* (1995), 102 Ohio App.3d 71.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14785.

Decided March 22, 1995.

*John M. Ruffolo,* for appellee.

*Daniel A. Nagle,* for appellant Darrell L. Pheanis.

*Richard E. Pryor,* for appellee McMahan's Mobile Homes.

WOLFF, Judge.

Darrell Pheanis appeals from the judgment of the Montgomery County Court of Common Pleas which dismissed his counterclaim and cross-claim.

This matter arose out of a consumer transaction in which Robert Pheanis ("Robert") purchased a mobile home from McMahan's Mobile Homes ("McMahan's") on November 29, 1989. Robert entered into a retail installment contract and security agreement with McMahan's. Robert made a $1,820 down payment on the mobile home, and he agreed to pay the balance over fifteen years at an interest rate of fourteen percent. On the day of the sale, McMahan's assigned its rights in the contract and security agreement to Chrysler First Financial Services Corporation of America. Nations Credit is the successor in interest to

Chrysler's interest in this contract, and throughout this opinion we will refer to Nations Credit rather than Chrysler.

Also on November 29, 1989, McMahan's filed an application for a certificate of title in Robert's name with the Bureau of Motor Vehicles, but a certificate of title was not issued immediately. On December 24, 1989, Robert died. On February 13, 1990, the Clerk of Court for the Clark County Court of Common Pleas wrote to Nations Credit. The letter stated that McMahan's did not have a valid permit to sell mobile homes at the time Robert purchased his mobile home and that a certificate of title could not be issued in Robert's name until McMahan's obtained a permit. McMahan's permit had expired in November 1988. McMahan's renewed its license on March 9, 1990, and a certificate of title in Robert's name was issued on March 22, 1990, three months after his death.

On May 28, 1991, Darrell Pheanis ("Pheanis") was appointed executor of Robert's estate. On August 20, 1991, Pheanis received a letter from the Bureau of Motor Vehicles which indicated that McMahan's was not licensed to sell mobile homes at the time that Robert purchased his mobile home. In light of this information, Pheanis, by counsel, sent a letter to Nations Credit in September 1991, stating that he considered the transaction "null and void" and that he wanted to conclude the matter "without proceeding into litigation, if the parties are returned to the position upon which they were November 29, 1989, to wit: The return to Mr. Pheanis of this cash down payment of $1,820.00, plus all monthly payments thereafter made." In closing, Pheanis asked Nations Credit to respond regarding its decision to "negate the transaction and return * * * the funds." A copy of the letter was sent to counsel for Nations Credit. Pheanis, by counsel, sent a second letter to counsel for Nations Credit in December 1991, to follow up on his September "request for rescission." The second letter demanded that Nations Credit "do that which is necessary in finalizing the rescission of the party's contract * * *." The letter stated that "the trailer has been vacated" and that "upon receipt of [the payments previously made, Pheanis] would tender to [Nations Credit] the title of the mobile home."

On November 2, 1993, almost two years after Pheanis's second letter to Nations Credit, Nations Credit filed a complaint against Pheanis, as executor of Robert's estate, and McMahan's. Nations Credit claimed damages from Pheanis's failure to pay on the retail installment sale contract and demanded the return of the mobile home with compensation for depreciation. In the alternative, Nations Credit claimed that, if Pheanis had a valid defense to the contract, then its assignment contract with McMahan's was voidable, and it asked for the rescission of that contract.

Pheanis filed an answer, counterclaim and cross-claim. He alleged that McMahan's action in selling the mobile home without a license to do so was a

violation of R.C. Chapter 1345, the Consumer Sales Practices Act ("CSPA"), and provided Robert's estate with a defense to the enforcement of the retail installment contract. Pheanis contended that, pursuant to the CSPA, he was entitled to rescind the contract. He also alleged that McMahan's caused damage to Robert's estate because McMahan's was unable to procure a certificate of title in Robert's name during his lifetime.

Nations Credit moved for judgment on the pleadings against Pheanis as to the claims in Pheanis's counterclaim. McMahan's moved for summary judgment against Pheanis on the cross-claim and against Nations Credit on its claim for rescission of the assignment contract. Pheanis incorporated a motion for summary judgment against McMahan's into his response to McMahan's motion for summary judgment. The trial court granted Nations Credit's motion and McMahan's motion, and it did not expressly rule upon Pheanis's motion. The trial court subsequently filed an entry *nunc pro tunc* finding that there was no just reason for delaying the appeal of its judgments on the motions, notwithstanding the fact that other claims remained pending.

Pheanis appeals and asserts four assignments of error. Due to the similarity of the issues involved, we will consider the first two assignments of error together.

"I. The trial court erred in sustaining the motion of the plaintiff-appellee, Nations Credit, for judgment on the pleadings by predicating its opinion upon the finding that § 1345.09(C) O.R.C. requires the filing of a rescission cause of action within a reasonable time after discovery of the grounds for rescission.

"II. The trial court erred in sustaining the motion of [McMahan's Mobile Homes] for summary judgment as to claims one and three of the cross-complaint by predicating its opinion upon the finding that § 1345.09(C) O.R.C. requires the filing of a cause of rescission action [*sic*], within a reasonable time after discovery of the grounds for rescission."

█ In these assignment of error, Pheanis contends that the trial court erred in determining that he did not rescind the contract within a reasonable time after he discovered the grounds for rescission. The trial court found that "[b]y September of 1991, [Pheanis] was fully aware of all issues herein and wrote a letter to [Nations Credit] rescinding said agreement. [Pheanis's] complaint alleging violation of the Consumer Sales Practices Act, however, was not filed until November 1993." The court concluded that Pheanis failed to file his cause of action for rescission within a reasonable time and that his action to rescind was barred by R.C. 1345.09(C).

R.C. 1345.09(A) provides private remedies for violations of the CSPA, and permits the injured party to choose between rescission of the contract or an

action for damages. R.C. 1345.09(C) places a restriction on the remedy of rescission:

"In any action for rescission, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the consumer transaction."

The CSPA sets forth an absolute two-year statute of limitations in which to file a suit for damages from the time of the occurrence of the violation. R.C. 1345.10(C). However, where a consumer elects the remedy of rescission, he must revoke the transaction within a reasonable time *after he discovers or should have discovered the ground for rescission,* and the absolute two-year statute of limitations does not apply. R.C. 1345.09(C); *Cypher v. Bill Swad Leasing Co.* (1987), 36 Ohio App.3d 200, 202, 521 N.E.2d 1142, 1144; *Andrews v. Scott Pontiac Cadillac GMC, Inc.* (1991), 71 Ohio App.3d 613, 619–620, 594 N.E.2d 1127, 1131–1132; *Frey v. Vin Devers, Inc.* (1992), 80 Ohio App.3d 1, 8, 608 N.E.2d 796, 801.

In the trial court's entry sustaining Nations Credit's motion for judgment on the pleadings, the trial court reasoned as follows:

"The security agreement which is at issue in this case was entered into in November of 1989. [Pheanis], Executor, was appointed in May 1991. By September of 1991, Executor was fully aware of all issues herein and wrote a letter to [Nations Credit] *rescinding said agreement.* The Executor's complaint alleging violation of the Consumer Sales Practices Act, however, was not filed until November 1993, in response to Plaintiff's complaint.

"Therefore, it is the opinion of this Court that the Executor's cause of action to rescind the contract is barred by section 1345.09(C), since it was not filed within a reasonable time after the Executor discovered the grounds for it." (Emphasis added.)

The trial court found that Pheanis failed to revoke the transaction within a reasonable time because the action for rescission was filed more than two years after he discovered or should have discovered the alleged violation of the CSPA. However, the statute does not require that an *action* for rescission must be brought within a reasonable time after the grounds for it are discovered; rather, *"revocation* of the consumer transaction must occur within a reasonable time." (Emphasis added.) R.C. 1345.09(C). Rescission, the unmaking of a contract, may be accomplished without resort to legal proceedings. 12 Williston on Contracts (1970) 198, Section 1469. Thus, Pheanis did not need to commence a legal action to effectuate his rescission of the contract. Assuming that he had a right pursuant to the CSPA to rescind the contract, the trial court noted in its decision that Pheanis rescinded the transaction in his September 1991 letter.

Therefore, the trial court should have determined whether the September 1991 letter was timely, rather than whether Pheanis filed an action for rescission within a reasonable time.

Pheanis had discovered the alleged ground for rescission on August 20, 1991, when he received a letter from the Ohio Bureau of Motor Vehicles, and he rescinded the transaction within one month of the discovery. Thus, on this record, it cannot be said that, as a matter of law, Pheanis failed to revoke the transaction within a reasonable time after he discovered the ground for rescission. The trial court erred in granting Nations Credit's and McMahan's motions on the basis that Pheanis did not file an action for rescission until November 1993.

■ Both Nations Credit and McMahan's offer alternative theories to support the judgment of the trial court. In the interest of maintaining the finality of the judgment, we will address each of these alternative theories regardless of whether they were raised below. We are not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis for the judgment. *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 551 N.E.2d 172.

■ Nations Credit argues that the timeliness of Pheanis's action is irrelevant because Nations Credit is exempt from the CSPA. Nations Credit contends that it is a "dealer in intangibles" as defined by R.C. 5725.01. The CSPA specifically excludes transactions between people defined in R.C. 5725.01 and their customers from the definition of "consumer transaction." R.C. 1345.01(A).

Nations Credit supports its argument with citations to cases holding that "a mere assignee of the installment obligation[ ] is not a supplier within the meaning of R.C. 1345.01(C)." *Dartmouth Plan, Inc. v. Haerr* (Dec. 4, 1990), Logan App. No. 8–89–25, unreported, 1990 WL 197884; see, also, *NCR Universal Credit Union v. Kleinberg* (Apr. 6, 1990), Montgomery App. No. 11807, unreported, 1990 WL 40632. However, those cases are distinguishable from this case. In *NCR*, the consumer accused the assignee, NCR, of violating the CSPA through its debt collection practices. In *Dartmouth*, the consumer alleged that the assignee was liable for its own violations of the CSPA and for the original seller's violations; however, the appellate court addressed only the consumer's direct claim against the assignee and properly avoided determining the issues raised by the consumer's claim that the assignee was vicariously liable. The courts in *NCR* and *Dartmouth* held that the assignees were exempt from the CSPA. Therefore, the assignees were not bound by the provisions of the CSPA, and they could not be liable under the CSPA for their practices which would have been violations of the CSPA if the assignees had been "suppliers." In contrast, Pheanis did not allege that Nations Credit directly violated the CSPA. Rather, he argued only that

Nations Credit was derivatively liable for McMahan's alleged violation of the CSPA.

Pheanis's first argument in support of his position was that Nations Credit was a "supplier" subject to the CSPA because the contract stated that the term "seller" as used in the contract included any of McMahan's assignees and the definition of "supplier" in R.C. 1345.01(C) includes "sellers." Whether a party falls within the statutory definition of a term cannot be determined from the contractual definition of a label used for the purposes of the contract. Therefore, we are not persuaded by Pheanis's argument that Nations Credit was a "supplier" for the purposes of the CSPA simply because the definition of the "seller" in the retail installment contract included Nations Credit as the assignee of the contract.

In his second argument in support of Nations Credit's derivative liability, Pheanis relied on the following bold-face language in the retail installment contract:

"NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."

The clear implication from this language is that Nations Credit, as a holder of the retail installment contract, was subject to any defense which Pheanis could assert against McMahan's. Nations Credit argues that this language, which is required by federal law to appear on consumer credit contracts, cannot make it subject to a state law from which it is exempt. Although that argument might be valid if Pheanis were asserting that Nations Credit itself violated the CSPA, Nations Credit's argument must fail where Pheanis is asserting a defense he had against McMahan's. See *Hardeman v. Wheels, Inc.* (1988), 56 Ohio App.3d 142, 145, 565 N.E.2d 849, 852; *Provident Bank v. Barnhart* (1982), 3 Ohio App.3d 316, 318–319, 3 OBR 370, 371–372, 445 N.E.2d 746, 748–749. Pheanis is not attempting to hold Nations Credit accountable as a dealer in intangibles; rather, he is asserting a defense to the enforcement of a consumer transaction based upon the actions of the seller of the goods. Thus, while Nations Credit may not be subject to the CSPA for its own actions toward Pheanis, it agreed to be derivatively liable for McMahan's violations of the CSPA when it accepted the assignment of the contract. Therefore, Nations Credit's alleged exemption from direct actions under the CSPA does not support the trial court's judgment.

■ In its appellate brief, McMahan's offers an additional basis to justify affirming the trial court's judgment dismissing Pheanis's counterclaim and cross-claim. McMahan's contends that Pheanis's claim for rescission based upon the CSPA did not survive Robert's death. McMahan's argues that Robert's estate cannot maintain an action for a violation of the CSPA because actions for unfair and deceptive sales practices did not exist at common law and because the survival statute does not explicitly include consumer protection actions.

Before addressing the merits of this argument, we note that McMahan's asserts this argument as an alternative to its argument that Pheanis was time-barred from asserting his right of rescission by R.C. 1345.09(C). We interpret McMahan's survival argument as an alternative means to support the trial court's judgment. Our subsequent discussion of Pheanis's "action for rescission" must not be interpreted to mean that Pheanis was required to file a legal action in order to assert his alleged right to rescind. Rather, having determined that it cannot be said as a matter of law that Pheanis failed to revoke the transaction within a reasonable time, we are now determining whether Robert's alleged right to rescind survived his death.

The survival statute, R.C. 2305.21, expands the common law regarding the survival of claims:

"In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto."

Pheanis's claim for rescission, based upon an alleged violation of the CSPA which did not injure a person or property, is not within any of the specific additions to the common law. Therefore, we must determine whether Pheanis's claim survived at common law.

Initially, we note that the case before us is distinguishable from *Motzer Dodge Jeep Eagle, Inc. v. Ohio Atty. Gen.* (1994), 95 Ohio App.3d 183, 642 N.E.2d 20, upon which McMahan's relies. In *Motzer*, the court denied the Attorney General's claim for restitution damages for a consumer who died prior to the trial court's judgment. *Id.* at 192, 642 N.E.2d at 26–27. The appellate court held that the cause of action for damages for unfair or deceptive sales practices did not exist at common law and that the claim did not constitute an injury to property. *Id.* In contrast, Pheanis brought an action for rescission, not an action for damages. We express no opinion on the issue of whether an action for damages under the CSPA survives the death of the consumer.

■ At common law, actions in which the wrongs complained of affect primarily property or property rights are survivable actions. 1 American Jurisprudence

2d (1994) 108, Abatement, Survival, and Revival, Section 52. "The survival of an action depends primarily on the substance of the cause of action, and not on the forms of the proceedings to enforce the cause." *Id.* at 114, Section 58. Therefore, if the substance of a statutorily created cause of action is within a category of actions which survive at common law, the statutory cause of action will survive even though the statute creating it does not provide for its survival. *Id.* at 118, Section 62. An action for rescission of a contract survives at common law because property rights are involved. *Id.* at 141, Section 97. The substance of Pheanis's action is an action for rescission of a contract. Thus, his action survives at common law, regardless of the fact that his alleged right to rescind was created by a statute which did not expressly provide for the action's survival. Moreover, as a policy matter, if Nations Credit can enforce the contract against Robert's estate, his estate should be able to assert any defenses he had to the contract. Therefore, the action for rescission survived Robert's death, and the survival statute does not provide a basis to affirm the trial court's judgment.

Nations Credit and McMahan's argue in their appellate briefs that Pheanis was precluded from bringing an action for rescission because the condition of the mobile home had been substantially changed. See R.C. 1345.09(C), quoted *supra.* The trial court did not reach this element of the requirements to support an action for rescission, and the parties did not provide the trial court with sufficient evidence to make this determination on a motion for summary judgment or for judgment on the pleadings. Therefore, we will not address this issue on appeal.

For the foregoing reasons, the first assignment of error, regarding the dismissal of Pheanis's counterclaim against Nations Credit, is sustained. Nations Credit argues that if we sustain this assignment of error, allowing Pheanis to proceed on his action for rescission against Nations Credit, we must reinstate Nations Credit's claim for rescission of the assignment contract against McMahan's. The trial court granted McMahan's motion for summary judgment against Nations Credit on the sole basis that Pheanis had no claim against Nations Credit. Therefore, as a result of our holding that Pheanis may proceed on his action against Nations Credit, Nations Credit is entitled to proceed on its action to rescind the assignment contract between itself and McMahan's.

■ In considering the second assignment of error, McMahan's raises a final argument to support the trial court's dismissal of Pheanis's cross-claim for rescission. McMahan's argues that Pheanis did not revoke the contract as against McMahan's within a reasonable time because Pheanis only sent his September 1991 letter to Nations Credit. McMahan's claims that notice to Nations Credit was insufficient to notify McMahan's of Pheanis's election of the rescission remedy within a reasonable time.

Pheanis sent the September 1991 letter rescinding the contract to the party holding the contract and collecting any payments on the contract, Nations Credit. Currently, as a result of the assignment of the contract to Nations Credit, McMahan's has no rights or obligations under the retail installment contract. However, if Nations Credit prevails on its claim to rescind the assignment contract, then McMahan's will once again be a party in interest to the contract and could be liable to Pheanis. Thus, Nations Credit should have notified McMahan's that possible grounds to rescind the assignment contract had arisen, and Pheanis did not have a duty to notify McMahan's of his intent to rescind the retail installment contract. Therefore, Pheanis's failure to notify McMahan's of his intent to rescind the retail installment contract with Nations Credit has no effect on his alternative claim against McMahan's.

For the foregoing reasons, the second assignment of error is also sustained.

"III. The trial court erred when it determined that the [Pheanis's] claims, against [Nations Credit], were barred by the statute of limitations, and that no issue exists between [Nations Credit] and [Pheanis]."

In this assignment of error, Pheanis contends that the trial court found that his claim against Nations Credit was barred by the two-year statute of limitations set forth in R.C. 1345.10(C). However, as we explained in our discussion of the previous assignments of error, the trial court did not apply the absolute two-year statute of limitations to Pheanis's cause of action. Rather, the court applied the proper limitations period to rescind a contract under the CSPA, *i.e.*, revocation must occur within a reasonable time after the consumer discovers, or should have discovered, the grounds for rescission. R.C. 1345.09(C). Accordingly, this assignment of error is overruled.

"IV. The trial court erred in finding that its decisions, in favor of [Nations Credit] on its motion for judgment on the pleadings, and in favor of [McMahan's] on its summary judgment [*sic*], 'clears any motions currently pending in this case,' which in effect, the court appears to have overruled [Pheanis's] motion for summary judgment filed on May 5, 1994, which motion for summary judgment had not been heard by the trial court."

In his fourth assignment of error, Pheanis contends that the trial court committed error by failing to expressly rule on his motion for summary judgment. Pheanis's motion was incorporated into his memorandum opposing McMahan's motion for summary judgment. The Supreme Court of Ohio has recently held that "Civ.R. 56(C) places a mandatory duty on a trial court to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment. The failure of a trial court to comply with this requirement constitutes reversible error." *Murphy v. Reynoldsburg* (1992), 65

Ohio St.3d 356, 360, 604 N.E.2d 138, 141. There is no indication in the record that the trial court complied with this requirement. Given the substantial likelihood that any implied judgment overruling Pheanis's motion was based upon the trial court's judgments granting Nations Credit's and McMahan's motions, we cannot indulge the presumption that the trial court acted as it ought to have acted in considering Pheanis's motions. Accordingly, the fourth assignment of error is sustained.

The judgments of the trial court dismissing Pheanis's counterclaim and cross-claim and dismissing Nations Credit's claim against McMahan's will be reversed. This matter will be remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BROGAN, P.J., and FAIN, J., concur.