OPINION
{¶ 1} This is an appeal and a cross-appeal from a judgment of the court of common pleas in favor of a consumer and against a creditor for damages arising from a supplier's violation of the Consumer Sales Practices Act in connection with the sale of a motor home. We find that the creditor, having waived its rights as a holder in due course, is derivatively liable for statutory treble damages and attorney's fees owed by the supplier. However, the extent of the consumer's recovery from the creditor is limited to the total amount the consumer paid the creditor on the loan. Though the trial court awarded a greater amount, any error is waived by the creditor's failure to object. We also find that the trial court did not abuse its discretion when, in calculating damages, it relied on the consumer's opinion concerning the actual value of the vehicle he purchased. Accordingly, we will affirm the judgment from which the appeal was taken.
 {¶ 2} On October 10, 1999, Ellen and Roscoe Reagans purchased a motor home manufactured by Mountainhigh Coachworks, Inc. ("Mountainhigh") from Paul Sherry Vans and R.V.'s, Inc. ("Paul Sherry"), which arranged financing of the purchase by Firstar Bank N.A. ("Firstar").[1] The purchase price of the motor home was $85,995.00. The cost of an extended warranty and related fees increased the cost to $91,161.72, which the Reagans financed through Firstar.[2] They agreed to pay monthly installments of $713.43 for a term of twenty years, for a total payment of $172,423.70.
 {¶ 3} After the motor home was delivered the Reagans discovered a serious design defect in its suspension that rendered it unsafe to operate. They commenced the underlying action against Mountainhigh, Paul Sherry, and Firstar on multiple claims for relief. The particular claim at issue in this appeal is an alleged violation of Ohio's Consumer Sales Practices Act ("CSPA"), R.C. Chapter 1345. The Reagans sought awards of treble damages and attorneys fees authorized by R.C. 1345.09(B) and (F).
 {¶ 4} The case was tried to a jury which returned joint and several verdicts for the Reagans and against Mountainhigh and Paul Sherry in the amount of $181,923.20, as and for actual compensatory damages. The court remitted that amount to $53,778, a remittitur which the Reagans accepted. The court then trebled the damage awards against Mountainhigh and Paul Sherry to $161,334 pursuant to R.C. 1345.09(B). The jury also found that the Reagans were entitled to reasonable attorneys fees. In subsequent proceedings, the court found that the Reagans had incurred reasonable attorneys fees totaling $38,680.64, and it awarded judgments against Mountainhigh and
 {¶ 5} Paul Sherry in that amount pursuant to R.C. 1345.09(F).
 {¶ 6} Because Mountainhigh and Paul Sherry had both ceased business when the judgments against them were entered, the Reagans asked the court to grant judgments in an equal amount against Firstar. The court awarded the Reagans a judgment against Firstar in the amount of their remitted actual damages, $53,778.00, but declined to award treble damages and attorney's fees, relying on the authority of Hardeman v. Wheels, Inc.
(1988), 56 Ohio App.3d 142.
 {¶ 7} The Reagans filed a timely notice of appeal. Firstar filed a timely notice of cross-appeal.
 The Reagans Appeal ASSIGNMENT OF ERROR
 {¶ 8} "THE TRIAL COURT ERRED WHEN IT FAILED TO ASSERT APPELLANTS' ATTORNEY FEES AND TREBLE DAMAGES DEALER JUDGMENT AGAINST U.S. BANK."
 {¶ 9} This assignment of error and the issues it presents require us to consider the interaction and application to these facts of two provisions. The first is R.C. 1345.09(B) and (F), which authorize relief in the form of treble damages and attorneys fees against a supplier who has committed a CSPA violation. The second provision is the "anti-holder in due course" Trade Regulation Rule promulgated by the Federal Trade Commission. 16 C.F.R. 433.1, et seq: 40 F.R. No. 223, 53506 (Nov. 18, 1975).
 {¶ 10} A holder in due course is a person who in good faith has given value for a negotiable instrument that is complete and regular on its face, is not overdue, and to the possessor's knowledge has not been dishonored. Under UCC Section 3-305, a holder in due course takes the instrument free of all claims and personal defenses that may be asserted by the obligor against the payee or its successors, but subject to any other real defenses the obligor has against the holder. The UCC provision is codified at R.C. 1303.35.
 {¶ 11} The Federal Trade Commission is authorized by law to prohibit unfair or deceptive acts or practices in commerce and to promulgate industry-wide rules to accomplish that end.28 Stat. 717 (1914), 15 U.S.C.A. 41, as amended. In 1975, the FTC promulgated its Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses. 16 C.F.R. 433.1, et seq. The rule became effective on May 14, 1976.
 {¶ 12} In promulgating its Trade Regulation Rule, the FTC found that the holder in due course doctrine unfairly allocates to consumers costs occasioned by seller misconduct in credit sale transactions, arising from breaches of warranty, misrepresentation, and even fraud. To remedy the problem, the FTC ruled that "consumer credit obligations should be subject to claims and defenses whenever credit is arranged or secured in connection with a continuing relationship between a seller and a creditor," reasoning that "sellers should not avoid the costs occasioned by their misconduct and creditors are always in a better position than consumers to return misconduct costs" to sellers. Id.
 {¶ 13} To correct those problems and balance the equities, the FTC's Trade Regulation Rule provides that it is an unfair or deceptive act or practice for a creditor to take or receive a consumer credit contract that fails to contain a particular notice. Two forms are prescribed, one for installment sales contracts obtained by a supplier and another where, as in the present case, a supplier arranges a direct loan by a creditor to the consumer to finance the purchase. That notice, which appears in the Note and Security Agreement between the Reagans and Firstar (Plaintiff's Exhibit 4) states:
 "NOTICE {¶ 14} "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OF SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."
 {¶ 15} The effect of placing the Notice in a consumer credit contract is two-fold. First, it puts potential holders on notice that claims or defenses arising from the sales transaction which are available to a consumer against a seller or supplier under applicable state law will likewise apply to the holder, subject to the limitations on the consumer's right of recovery from a holder imposed by the second sentence of the Notice. Second, it becomes a part of the integral terms and conditions of the credit contract, shifting at least some of the risk and cost of seller misconduct from the consumer to the holder, being subject to the recovery limitation.
 {¶ 16} In explaining the purpose and effect of the Notice, staff guidelines published by the FTC states that it "protect(s) the consumer's right to assert against the creditor any legally sufficient claim or defense against the seller. The creditor stands in the shoes of the seller." Fed. Reg., Vol. 41, No. 95, at 20023. Further: "There is an important limitation on the creditor's liability, however. The wording of the Notice includes the sentence `Recovery hereunder by the debtor shall be limited to amounts paid by the debtor hereunder.' This limits the consumer to a refund of monies paid under the contract, in the event that an affirmative money recovery is sought. In other words, the consumer may assert, by way of claim or defense, a right not to pay all or part of the outstanding balance owed the creditor under the contract; but the consumer will not be entitled to receive from the creditor an affirmative recovery which exceeds the amounts of money the consumer has paid in.
 {¶ 17} "Thus, if a seller's conduct gives rise to damages in an amount exceeding the amounts paid under the contract, the consumer may (1) sue to liquidate the unpaid balance owed to the creditor and to recover the amounts paid under the contract and/or (2) defend in a creditor action to collect the unpaid balance. The consumer may not assert against the creditor any rights he might have against the seller for additional consequential damages and the like. The same situation would exist where a seller's conduct would, as a matter of law, entitle a buyer to rescission and restitution. The consumer, relying on the required Notice could initiate proceedings to invalidate the credit contract and receive a return of monies paid on account. If a downpayment were made under the credit contract, the consumer could recover the downpayment as well as other payments. Recovery of a downpayment would be possible under many installment sales situations where a direct loan contract is used, because the downpayment would not have been made pursuant to the loan contract.
 {¶ 18} "The limitation on affirmative recovery does not eliminate any other rights the consumer may have as a matter of local, state, or federal statute. The words `recovery hereunder' which appear in the text of the Notice refer specifically to a recovery under the Notice. If a larger affirmative recovery is available against a creditor as a matter of state law, the consumer would retain this right.
 {¶ 19} "It is also important to note that the Rule does not create new rights or defenses. The words `Claims and Defenses' which must appear in the Notice are not given any special definition by the Commission. The phrase simply incorporates those things which, as a matter of other applicable law, constitute legally sufficient claims and defenses in a sales transaction. Appropriate statutes, decisions, and rules in each jurisdiction will control, and the pertinent rules of law and equity, including rules of evidence, procedure, and statutes of limitations, will continue to apply." Id., at 20023-20024.
 {¶ 20} In Ohio, the rights and remedies to which the FTC Staff Guidelines refer are generally contained in R.C. Chapter 1345, the Consumer Sales Practices Act. R.C. 1345.02(A) states: "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section, whether it occurs before, during, or after the transaction."
 {¶ 21} R.C. 1345.09 provides that "[f]or a violation of Chapter 1345 of the Revised Code, a consumer has a cause of action and is entitled to relief as follows." Paragraph (A) authorizes rescission and damages. Paragraph (B) states that, alternatively, the consumer "may recover, but not in a class action, three times the amount of his actual damages or two hundred dollars, whichever is greater." Paragraph (F) authorizes the court to award "reasonable attorney's fees limited to the work reasonably performed" when "[t]he supplier has knowingly committed an act or practice that violates this chapter."
 {¶ 22} The seller or "supplier" in this instance was Paul Sherry. The jury found that Paul Sherry breached an implied warranty it gave the Reagans (Interrogatory No. 9), and that the breach constitutes an unfair and deceptive act." (Interrogatory No. 13). After the jury's actual damage award[3] was remitted to $53,778, the court entered judgments against Paul Sherry in the amount of $161,334.00 as and for treble damages for its violation of R.C. 1345.02. It also awarded reasonable attorney's fees for work performed, which the court subsequently determined are $38,680.64. The total of these sums is $200,014.64. The issue presented is whether and to what extent the judgments against Paul Sherry should likewise apply to Firstar pursuant to the FTC Notice in its credit contract with the Reagans.
 {¶ 23} In deciding that issue we are enjoined by R.C.1345.02(C), which states: "in construing division (A) of this section, the court shall give due consideration and great weight to federal trade commission orders, trade regulation rules and guides, and the federal courts' interpretation of subsection 45(a)(1) of the Federal Trade Commission Act."
 {¶ 24} In Hardeman v. Wheels, Inc., on which the trial court here relied, the Court of Appeals of Warren County held that neither the treble damages nor the attorneys' fees provisions of R.C. 1345.09(B) and (F) which apply against a seller or supplier extend to a third-party assignee holder of a credit contract containing the FTC Notice. The court reasoned that while a culpable seller should be punished, "[t]he onerous burden of paying a potentially extensive statutory and common-law punitive award against a culpable merchant should not be imputed to an innocent assignee of the contract." Id., at 145. The court further reasoned that because the attorney's fees provision of R.C. 1345.09(F) specifically applies to a seller who commits a knowing violation, it should not likewise apply to the seller's assignee.
 {¶ 25} The rationale of Hardeman reflects the policy and logic of the holder in due course doctrine codified in R.C.1303.35. However, it fails to take account of the exemption from that rule which the FTC Notice creates when it is part of a consumer credit agreement. FTC v. Winters Nat'l. Bank and TrustCo. (1979), 601 F.2d 395. The purpose of requiring the Notice is to shift the costs of seller misconduct to lenders, to the extent permitted by applicable state law. Lozada v. Dale BakerOldsmobile (2000), 91 F.Supp. 2d 1087. In Ohio, claims for such costs include those available under the CSPA in R.C. Chapter 1345. To the extent that such claims as they apply to creditors conflict with the more general provisions of R.C. 1303.35
codifying the holder in due course doctrine, the more specific provisions of R.C. Chapter 1345 necessarily prevail. R.C. 1.52.
 {¶ 26} The FTC Trade Regulation Rule was promulgated in 1975 and became effective in 1976. R.C. 1345.09 became effective in 1972 and was subsequently amended and became effective in its present form in 1978. Though it could have, the General Assembly has not modified R.C. 1345.09 to relieve creditors of the relief the FTC Notice affords consumers, to the extent that the Trade Regulation Rule operates to extend seller liability under CSPA to creditors. Doing that is a public policy choice properly made by the General Assembly. The problem we find with the holding inHardeman v. Wheels, Inc., is that, in effect, its holding imposes a policy choice of that kind made by a court. Therefore, we decline to follow Hardeman.
 {¶ 27} Firstar argues that a further distinction applies. The FTC Notice applies to "claims and defenses" while the treble damages and attorneys fees provisions of R.C. 1345.09 are allowed by that section as "relief" on a "cause of action." Therefore, neither treble damages nor attorneys fees awarded as relief against a seller should extend to a creditor subject to the FTC Notice, according to Firstar.
 {¶ 28} We agree that a distinction exists between claims and defenses relating to the question of liability and any relief for losses from which that liability arises. However, R.C. 1345.09
speaks of not only relief but a "cause of action," and claims and defenses apply to causes of action. Furthermore, if applied to exempt creditors from the cost-shifting effect of the FTC Notice, such a distinction would be counterintuitive to the polices and purposes of the FTC Trade Regulation Rule by its own terms and those of the Staff Guideline, to which we are required to "give due consideration and great weight." R.C. 1345.02(C). Therefore, we adhere to the observation of the FTC Staff Guidelines that the creditor "stands in the shoes" of the seller or supplier, which was our holding in Nations Credit v. Pheanis (1995),102 Ohio App.3d 71, and for that reason find that the full relief in the form of treble damages and attorneys fees made available to consumers and against suppliers pursuant to R.C. 1305.09(B) and (F) likewise applies to creditors such as Firstar.
 {¶ 29} Though the judgments in favor of the Reagans against Paul Sherry for treble damages and attorneys fees apply to Firstar, because it stands in the shoes of Paul Sherry, the final sentence of the FTC Notice in the credit contract between the Reagans and Firstar likewise applies. It states: "Recovery hereunder by the debtor shall not exceed amounts paid by the debtor." Firstar argues that, manifestly, the provision caps the amount of the judgment that may be entered against it. We agree. Whether for damages that have been trebled or for attorneys fees awarded per R.C. 1305.09, the "recovery" is the maximum amount that may actually be obtained by the consumer on a judgment against the creditor. The further issue, at least on this record, is the amount of that cap and the resulting judgment against Firstar.
 {¶ 30} It is undisputed that the Reagans made loan installment payments to Firstar totaling $42,805.80. Instead of applying that amount to limit Firstar's liability on the total judgments of $200,014.64 it had granted the Reagans against Paul Sherry for treble damages and attorneys fees, the court entered judgment against Firstar in the amount of its remitted actual damages award, $53,778.00, and granted no judgment for attorneys fees. The court followed Hardeman v. Wheels, Inc. in so doing.
 {¶ 31} The amount of the award the trial court made presents two problems. First, in determining the cap on recovery, the court added the value of the Reagans' trade-in, $46,800, to the total of the payments they made, $42,805.80, to find that the cap amounts to $90,805.80. However, the value of a trade-in becomes a part of the total recovery only when the supplier makes a direct loan to the consumer and then sells the obligation to a holder, which is then liable for the total of installments plus the amount of the trade-in. Here, the value of the Reagan's trade-in did not affect the amount they subsequently borrowed from Firstar, and in any event was a "wash" because the lien outstanding on the trade-in equaled what Paul Sherry gave the Reagans for it. Second, the court awarded damages against Firstar in the amount of the actual damages the Reagans suffered, $53,778, instead of the total of the installments they had paid Firstar, $42,805.80.
 {¶ 32} Firstar's liability is derivative of the liability of Paul Sherry. Having held that Firstar is not exempt from the treble damages and attorney's fees provisions of R.C. 1305.09(B)and (F) on which Paul Sherry's liability was determined, we find the trial court erred when it instead held that Firstar is liable only for the amount of the actual damage award against Paul Sherry, $53,778.00, and then failed to cap that award at $42,805.80 pursuant to the FTC Notice. Firstar does not complain of that error on appeal. Therefore, with respect to any prejudice Firstar suffered, the error is waived. The Reagans do not complain of the error, naturally enough, but argue instead that they are entitled to recover from Firstar the full amount of their judgment against Paul Sherry. For the reasons discussed, we reject that contention. Therefore, on the error the Reagans assign, the $53,778.00 judgment in their favor against Firstar will be affirmed.
 {¶ 33} The Reagans' assignment of error is overruled
 Firstar's Cross-Appeal ASSIGNMENT OF ERROR
 {¶ 34} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE BANK BY ACCEPTING PLAINTIFF'S EVIDENCE OF DIMINISHED VALUE AND INCLUDING THAT AMOUNT IN THE JUDGMENT AGAINST THE BANK."
 {¶ 35} The trial court arrived at the remitted award of damages against Paul Sherry in the amount of $53,778 by subtracting from the purchase price of the motor home, $85,955.00, the actual value of the defective vehicle, which Roscoe Reagans opined was $35,000, then adding another $2,823 for the costs of an extended warranty the Reagans purchased from Paul Sherry, plus licensing fees and the Reagans' lost wages.
 {¶ 36} The error which Firstar assigns concerns the opinion Roscoe Reagan gave in the following colloquy:
 {¶ 37} "Q. All right. So you have a general sort of knowledge about R.V. vehicles and prices and such, right?
 {¶ 38} "A. Yes, sir, I did.
 {¶ 39} "Q. Okay. Now can you tell the Jury, do you have an opinion on what was the value of this R.V. on the date of delivery, if it had been as it was represented to be?
 {¶ 40} "A. Well, I believe at the time I bought it, it was worth what I was giving for it.
 {¶ 41} "Q. Okay. And I believe the sales contract there has like eighty-five, eighty-six thousand dollars or whatever, right?
 {¶ 42} "A. Yes, sir, I think so.
 {¶ 43} "Q. Okay. Now can you tell the Jury, do you have an opinion on what the value of this R.V. was on the date of delivery in the condition that it actually was as your later found out it to be?
 {¶ 44} "A. I would say probably thirty-five, forty thousand dollars." (T. 205).
 {¶ 45} Firstar argues that the trial court erred when it relied on Reagans' opinion concerning the value of the vehicle he was sold to find that it was then worth only $35,000.00. Firstar contends that because the personal property does not have a value unique to the owner, market value and not value to the owner is the proper measure of loss, for which qualified expert testimony is required. Bishop v. East Ohio Gas Co. (1944),143 Ohio St. 541.
 {¶ 46} From the question he was asked, Reagans' opinion concerned not the value of the vehicle to him but its market value. Further, with respect to the market value, "[a]s an exception to the general rule, an owner is permitted to testify concerning the value of his property without being qualified as an expert, because he is presumed to be familiar with it from having purchased or dealt with it." Tokles v. MidwesternIndemnity Co. (1992), 65 Ohio St. 3d 621, paragraph two of the Syllabus by the Court.
 {¶ 47} So long as evidence is admissible for the purpose for which it was offered, and is not wholly speculative, the weight to be given to the evidence is a matter for the trier of fact to determine. In arriving at its remitted judgment, that function was the trial court's. We believe that Reagans' opinion was sufficiently probative of the matter it concerned, the vehicle's market value, that the court did not abuse its discretion when it adopted that opinion as the court's finding.
 {¶ 48} Firstar's cross-assignment of error is overruled. The judgment of the trial court will be affirmed.
Wolff, J., concurs.
[1] Firstar is now U.S. Bank National Association.
[2] A vehicle valued at $46,800 the Reagans traded-in did not affect the price of their purchase because of a lien on the trade-in in the same amount.
[3] The jury's verdict awarded damages in the amount of $181,923.20. The court remitted the award to $53,773.00. The Reagans accepted the remittitur.