REAGANS ET AL., APPELLANTS, *v.* MOUNTAINHIGH COACHWORKS, INC., ET AL.; FIRSTAR BANK, N.A., N.K.A. U.S. BANK NATIONAL ASSOCIATION, APPELLEE.

[Cite as *Reagans v. MountainHigh Coachworks, Inc.,* 117 Ohio St.3d 22, 2008-Ohio-271.]

(No. 2006–0489—Submitted January 23, 2007—Decided January 31, 2008.)

CUPP, J.

{¶ 1} Ellen and Roscoe Reagans ("the buyers") bought a motor home from Paul Sherry Vans and R.V.'s, Inc. ("Sherry"), but that motor home turned out to have a defect. The buyers sued Sherry and the manufacturer, MountainHigh Coachworks, Inc., for violations of the Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq., and a breach of an implied warranty on the vehicle, among other claims. The buyers also alleged that Firstar Bank, N.A., now known as U.S. Bank National Association ("the bank"), the creditor that loaned the buyers the money to buy the motor home, was derivatively liable for the buyers' claims against Sherry, the seller. The buyers prevailed at trial on some of their claims against Sherry and MountainHigh.

{¶ 2} The parties' briefs present two issues for our resolution. The first issue is whether a notice in the loan contract, included pursuant to a Federal Trade Commission ("FTC") regulation, Section 433.2, Title 16, C.F.R. ("the FTC rule"), limits the bank's total derivative liability to amounts the buyers actually paid on the consumer loan contract. The second is whether the bank can be held derivatively liable pursuant to the FTC rule for an award of treble damages and attorney fees against a seller of goods under the Ohio Consumer Sales Practices Act, R.C. 1345.09(B)(2) and (F)(2), and the judgment be set off against the

buyers' remaining loan balance. (Although appellants' two propositions of law are worded differently, these are the two issues that the case presents.)

{¶ 3} We hold that the notice mandated by Section 433.2, Title 16, C.F.R. to appear in a consumer credit contract limits a consumer's recovery from the creditor to the amount the consumer actually paid under the contract. Additionally, we hold that the FTC rule does not entitle the buyers to set off against their outstanding loan balance their judgment against the seller for treble damages and attorney fees under the Ohio Consumer Sales Practices Act, R.C. 1345.09(B)(2) and (F)(2).

## I

## A

{¶ 4} Appellants, Ellen and Roscoe Reagans, in October 1999, bought a new MountainHigh motor home from Sherry. MountainHigh Coachworks, Inc., manufactured the motor home. MountainHigh added the living area part of the vehicle to the Ford-manufactured chassis. The total purchase price of the motor home was $85,955.02 exclusive of tax and title charges. The buyers also purchased an extended warranty from Sherry, at a cost of $2,498. The bank issued the buyers a 20–year loan on the $91,161.72 principal amount. The finance charges on that loan were $81,261.48, and the total monthly loan payment was $718.43. The total amount the buyers agreed to pay over the life of the loan, including financing charges, was $172,423.20. (At trial, the parties stipulated that the loan payoff amount was then $79,700.08.)

{¶ 5} The buyers drove the motor home for approximately 6,000 miles. In July 2002, the buyers' mechanic told them that she saw signs that the rear wheels of the motor home had rubbed against the wheel wells.

{¶ 6} The buyers told Sherry about their problem with the vehicle. The buyers and Sherry were unable to reach agreement on the appropriate repair to, or replacement of, the vehicle.

## B

{¶ 7} In September 2002, the buyers sued MountainHigh, Sherry, and the bank. The buyers' complaint sought damages or, in the alternative, rescission of the contract. The buyers asserted claims against Sherry and MountainHigh under the Ohio Consumer Sales Practices Act, R.C. 1345.09.

{¶ 8} The buyers also alleged that the bank was derivatively liable for their claims against Sherry based upon an FTC-mandated notice in their loan disclosure, note, and security agreement with the bank:

{¶ 9} "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR

COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER." (Capitalization sic.)

{¶ 10} The FTC rule, found at Section 433.2, Title 16, C.F.R., requires that the notice appear in certain consumer credit contracts. At trial and in the court below, the bank did not dispute that the FTC rule required the notice in the loan contract at issue.

{¶ 11} The buyers elected to pursue their damages claim rather than seek rescission of the transaction. The jury returned a general verdict against Sherry in the amount of $181,923.20 and a verdict in the same amount against MountainHigh. MountainHigh, although named as a defendant, filed no pleadings in the case and did not defend at trial. The jury found that both MountainHigh and Sherry had breached an implied warranty to the buyers and that the vehicle was not as Sherry had represented it.

{¶ 12} After trial, the buyers sought an order requiring the bank to cancel the remaining amount on their loan, to refund the monies they had paid to date on that contract, and to deliver to them a certificate of title to the motor home free of any liens. The bank opposed the motion on the ground that allowing the buyers to keep the motor home and stop paying for it was a remedy unauthorized by Ohio law. The buyers separately moved for treble damages and an award of attorney fees against Sherry under the Consumer Sales Practices Act. The bank and Sherry moved for a new trial; Sherry moved, in the alternative, for a remittitur of the damages award.

{¶ 13} The trial court granted Sherry's motion for remittitur conditioned upon the buyers' acceptance, and in the alternative, granted a new trial on damages. The trial court noted that before trial, the buyers had elected to pursue their damages claim instead of rescission of the contract, and that under Ohio law, they were not entitled to both remedies. See R.C. 1345.09(A) (providing for rescission or the recovery of damages under the Consumer Sales Practices Act). The trial court concluded that the jury's award of $181,923.20 was excessive. Instead, the trial court reasoned, the amount of the buyers' damages that was recoverable under R.C. 1345.09(A) was the difference between the purchase price of the motor home and its actual value at the time of purchase. See *Eckstein v. Cummins* (1975), 46 Ohio App.2d 192, 194, 75 O.O.2d 341, 347 N.E.2d 549; see also *Evans v. Cheek* (1989), 65 Ohio App.3d 535, 537, 584 N.E.2d 1236. Based on Mr. Reagans's testimony at trial, the court determined that the value of the motor home at the time of delivery was $35,000. Accordingly, the trial court subtracted that amount from the purchase price of $85,955, and then added other items of damages totaling $2,823, for total actual damages of $53,778. The trial

court granted the motion for a new trial on damages unless the buyers consented to a remittitur in the total amount of $53,778.

{¶ 14} The trial court also granted in part the buyers' motion for judgment against the bank. The trial court held that under the FTC rule, the bank's derivative liability to the buyers for their judgment against Sherry was limited to the buyers' actual loss and could not exceed the amount paid on the loan. The trial court found that the buyers had made 60 payments of $718.43. (The total amount the buyers had paid on the contract as of the trial date thus was $43,105.80.) The trial court held that the bank's liability was limited to $53,778, the amount of the buyers' actual damages, which was less than $90,805.80, which the trial court found to be the maximum amount the buyers had paid on the contract. (The $90,805.80 amount included the $48,600 value of the buyers' trade-in vehicle. The court of appeals concluded that the trial court erred in including the value of the trade-in vehicle in the buyers' total payments on the contract, because the amount of the lien on the trade-in vehicle was equal to its value. See *Reagans v. MountainHigh Coachworks, Inc.*, 2d Dist. No. 05CA12, 2006-Ohio-423, 2006 WL 242602, ¶ 2, fn. 2, and ¶ 31.)

{¶ 15} The trial court held that "[s]ince the debt instruments on the R.V. loan were not rescinded the debt continues to be enforceable by [the bank]." The trial court further held that treble damages and attorney fees do not apply to a lender held derivatively liable for a seller's misconduct, citing *Hardeman v. Wheels, Inc.* (1988), 56 Ohio App.3d 142, 565 N.E.2d 849.

{¶ 16} By separate order, the trial court awarded treble damages and attorney fees against Sherry pursuant to the Ohio Consumer Sales Practices Act, R.C. 1345.09. The trial court trebled the $53,778 award of actual damages and assessed attorney fees against Sherry in the amount of $38,680.64. The trial court entered final judgment in favor of the buyers in the amount of $200,014.64 against Sherry, and in the amount of $53,778 against the bank. The trial court ordered the bank to apply the judgment against it to any outstanding balance that the buyers owed it on the loan.

{¶ 17} The buyers appealed. On appeal, they argued that the trial court erred in failing to impose against the bank the judgment against the seller for treble damages and attorney fees. The appeals court affirmed the trial court's judgment, but on other grounds. The appeals court opined that pursuant to the FTC notice, a creditor such as the bank can be held derivatively liable for treble damages and attorney fees awarded against a seller. *Reagans v. MountainHigh Coachworks*, 2006-Ohio-423, 2006 WL 242602, ¶ 29. However, the appeals court held that the FTC-mandated notice limited the buyers' recovery of damages against the bank to the total amount they had paid on the consumer credit contract (i.e., $43,105.80). The appeals court held that the bank had waived the

trial court's error in imposing the full amount of actual damages the trial court found, i.e., $53,778, rather than the total amount the buyers paid on the loan contract, $43,105.80, because the bank did not appeal that error. Accordingly, the court of appeals affirmed the trial court's judgment imposing the $53,778 judgment against the bank. *Reagans v. MountainHigh Coachworks, Inc.*, 2006-Ohio-423, 2006 WL 242602, ¶ 29–32.

{¶ 18} The buyers appealed to this court, and we granted review.

{¶ 19} In this court, the buyers offer two propositions of law. The first asserts that when a consumer credit contract contains the FTC-mandated notice, the creditor is liable for the buyer's entire judgment against the seller, up to the total amount the buyer paid under the credit contract. The buyers' second proposition of law contends that when a buyer's judgment against a seller exceeds the total amount the buyer paid under the credit contract, the buyer can set off the unpaid portion of the judgment against the balance due under the consumer credit contract. The second proposition of law encompasses the second issue in this case—namely, whether the holder of a consumer credit contract (here, the bank) can be held derivatively liable under the FTC rule for an award of treble damages and attorney fees under the Ohio Consumer Sales Practices Act, R.C. 1345.09(B)(2) and (F)(2).

## II

{¶ 20} The issues in this case pertain to the effect of the FTC-mandated notice included in the loan disclosure, note, and security agreement between the bank and the buyers. Accordingly, we begin with a discussion of the FTC rule, Section 433.2, Title 16, C.F.R., and its purpose.

## A

{¶ 21} Before the FTC rule, if a seller sold goods on credit and transferred the credit contract to a lender, the lender could enforce the buyer's promise to pay even if the seller failed to perform its obligations under the sales contract. Similarly, despite a seller's breach, the buyer was obligated to pay the lender under a consumer loan contract that directly financed the purchase of goods or services from the seller. See Guidelines on Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses, 41 F.R. 20,022, 20,023 (May 14, 1976) (describing the means by which credit terms for buyers separated the buyer's legal duty to pay from the seller's legal duty to perform). Cf. R.C. 1302.91 (describing buyer's right, upon notifying seller, to deduct from price due under the contract all or part of the damages resulting from the seller's breach of the contract).

{¶ 22} The FTC promulgated the rule to address the problem of a consumer's obligation to pay on a credit contract even when the goods financed by the loan

were defective or the seller otherwise breached its obligations under the sales contract. See Promulgation of Trade Regulation Rule and Statement of Basis and Purpose, 40 F.R. 53,506, 53,522 (November 18, 1975) ("The [FTC] believes that it is an unfair practice for a seller to employ procedures in the course of arranging the financing of a consumer sale which separate the buyer's duty to pay for goods or services from the seller's reciprocal duty to perform as promised"). The FTC rule requires certain credit contracts that finance the sale of consumer goods or services to include the rule's notice. See Section 433.2(a) and (b), Title 16, C.F.R. The rule applies not only to installment sales contracts that the seller transfers to a creditor, but also to a creditor's direct loan to a consumer for the acquisition of goods or services from a particular seller where the seller and lender have an established relationship directed at financing such sales. See 41 F.R. 20,024–20,025. Including the FTC notice in a consumer credit contract subjects a creditor to the defenses and claims the consumer debtor has against the seller of the goods financed by the credit contract. See, e.g., *Felde v. Chrysler Credit Corp.* (1991), 219 Ill.App.3d 530, 536–537, 162 Ill.Dec. 565, 580 N.E.2d 191 (FTC notice allowed consumer to bring warranty action against a creditor that otherwise would have been a holder in due course).

{¶ 23} According to the FTC guidelines, a consumer's "claims and defenses" to which the creditor is subject under the rule are simply "those things which, as a matter of other applicable law, constitute legally sufficient claims and defenses in a sales transaction." 41 F.R. at 20,023–20,024. Thus, the rule "does not create new rights or defenses." Id. at 20,023.

{¶ 24} The notice required by the FTC rule also limits the creditor's liability by providing that "[r]ecovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder." Section 433.2(a) and (b), Title 16, C.F.R. The FTC guidelines explain that "the consumer may assert, by way of claim or defense, a right not to pay all or part of the outstanding balance owed the creditor under the contract." 41 F.R. at 20,023. However, if the consumer seeks an affirmative monetary recovery from the creditor, the consumer will be limited to "a refund of monies paid under the contract." Id. In the FTC staff's opinion, the "vast majority of cases" will involve only a "limited right of set-off against the unpaid balance," because most sellers "do not do business in a way that creates a right to rescission." 41 F.R. at 20,024. The FTC, in its statement of basis and purpose of the rule, confirms that a consumer "can (1) defend a creditor suit for payment of an obligation by raising a valid claim against the seller as a set-off, and (2) maintain an affirmative action against a creditor who has received payments for a return of monies paid on account." 40 F.R. at 53,524. However, the "latter alternative will only be available where a seller's breach is so substantial that a court is persuaded that rescission and restitution are justified." Id.

{¶ 25} The FTC staff further opines that "if a seller's conduct gives rise to damages in an amount exceeding the amounts paid under the contract, the consumer may (1) sue to liquidate the unpaid balance owed to the creditor and to recover the amounts paid under the contract and/or (2) defend in a creditor action to collect the unpaid balance." 41 F.R. at 20,023. But the consumer "may not assert [against] the creditor any rights he might have against the seller for additional consequential damages and the like." Id.

{¶ 26} With these principles in mind, we turn to the question of the extent of the bank's derivative liability for the buyers' judgment against Sherry, the seller.

## B

{¶ 27} The FTC-mandated notice in the buyers' loan contract limited their monetary recovery against the bank to the amount paid by the buyers under the contract. See Section 433.2(a) and (b), Title 16, C.F.R. The buyers' judgment against the seller for treble damages and attorney fees (i.e., $200,014.64) exceeded the amount that the buyers actually paid under the contract (i.e., $43,105.80). As explained above, for the purpose of this appeal, the buyers' maximum recovery from the bank was established in the courts below as $53,778, rather than $43,105.80. *Reagans v. MountainHigh Coachworks*, 2006-Ohio-423, 2006 WL 242602, ¶ 26–27. (The bank does not challenge the court of appeals' determination of that matter before this court.)

{¶ 28} As one treatise explains, even when a buyer is entitled to stop paying on a consumer sales contract, such as when the buyer rejects goods, or revokes acceptance of them, the maximum exposure of the creditor for the buyer's damages under the FTC rule is the amount the buyer already paid under the contract. 2 White & Summers, Uniform Commercial Code (4th Ed.1995) 189, Section 17–9. "[E]ven if the buyer rejects [goods] and proves substantial damages, the maximum exposure of the creditor under the FTC rule is the amount already paid by the debtor. If, for example, the debtor buys an $8,000 car, pays $200 down and suffers $20,000 of damages as a result of breach of warranty, he can recover only $200 from the creditor and must turn to the seller for the additional $19,800." Id. See also *Valentino v. Glendale Nissan, Inc.* (2000), 317 Ill.App.3d 524, 251 Ill.Dec. 457, 740 N.E.2d 538 (FTC-mandated notice does not automatically entitle a consumer to cease making payments on a consumer loan and still avoid being in default).

{¶ 29} Accordingly, the court of appeals correctly affirmed the buyers' maximum recovery from the bank of $53,778.

## C

{¶ 30} In their second proposition of law, the buyers seek to set off against their remaining loan balance the amount of the buyers' treble-damages-and-

attorney-fees judgment awarded against the seller under the Ohio Consumer Sales Practices Act. The buyers contend that the FTC-mandated notice in their loan contract permits them to use the unpaid balance of their judgment as a setoff against the balance owed to the bank.

{¶ 31} Assuming, without deciding, that the FTC notice permitted the buyers to set off against their loan an amount greater than the amount they paid on their loan contract,[1] the buyers are not entitled to such a setoff in this case. This is because we conclude that the bank is not derivatively liable for the buyers' judgment against the seller for treble damages and attorney fees.

{¶ 32} The FTC rule was designed to preserve to borrowers under a consumer loan contract the claims or defenses a buyer would have against a seller that breached its duties in a sales transaction. See 40 F.R. at 53,522 (the FTC rule was designed to combat the perceived unfair practice of separating a buyer's duty to pay for goods from the seller's reciprocal duty to perform as promised). See also 41 F.R. at 20,023. The FTC rule does not create new rights or defenses. Id. Additionally, under the rule, the "consumer may not assert [against] the creditor any rights he might have against the seller for additional consequential damages and the like." Id.

{¶ 33} As a general matter, transactions between financial institutions and their customers are exempted from the definition of a "consumer transaction" subject to the Consumer Sales Practices Act. See R.C. 1345.01(A);[2] see also *Nations Credit v. Pheanis* (1995), 102 Ohio App.3d 71, 78, 656 N.E.2d 998 (distinguishing a lender's exemption from direct liability under the Consumer Sales Practices Act from its derivative liability under the FTC-mandated notice). For this reason, the bank is not directly subject to claims under the Consumer Sales Practices Act arising out of the bank's loan agreement with Mr. and Mrs. Reagans. Accordingly, the bank's derivative liability for the seller's misconduct under the Consumer Sales Practices Act exists only to the extent that the FTC notice requires such derivative liability.

---

1. The Guidelines on Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses, 41 F.R. 20,022, 20,023 (May 14, 1976), provide that "if a seller's conduct gives rise to *damages in an amount exceeding the amounts paid under the contract*, the consumer may (1) sue to liquidate the unpaid balance owed to the creditor *and* to recover the amounts paid under the contract and/or (2) defend in a creditor action to collect the unpaid balance." (Emphasis added.) However, the Guidelines also caution that the "vast majority of cases" will involve only a "limited right of set-off against the unpaid balance," because most sellers "do not do business in a way that creates a right to rescission." 41 F.R. at 20,024. See also Promulgation of Trade Regulation Rule and Statement of Basis and Purpose, 40 F.R. 53,506, 53,524 (Nov. 18, 1975).

2. R.C. 1345.01(A) was amended in 2007 to include certain residential mortgage transactions as a consumer transaction. Am.Sub.S.B. No. 185, effective Jan. 1, 2007. That amendment is not before us today.

{¶ 34} The Consumer Sales Practices Act allows consumers to recover treble damages and attorney fees from sellers for deceptive or unconscionable acts. See R.C. 1345.09(B), (F)(2).[3] Under the Act, treble damages are punitive in nature, intended to deter a seller's wrongful conduct. See *French v. Dwiggins* (1984), 9 Ohio St.3d 32, 35–36, 9 OBR 123, 458 N.E.2d 827, 831 (characterizing treble damages as a penalty, in contrast to compensatory damages); see also *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, ¶ 23 (under R.C. 1345.09(B), actual damages may be "trebled as a penalty" against a supplier). R.C. 1345.09(F)(2) permits a trial court in its discretion to award reasonable attorney fees against sellers who intentionally commit unfair or deceptive sales practices. *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 548 N.E.2d 933, syllabus; accord *Charvat v. Ryan*, 116 Ohio St.3d 394, 2007-Ohio-6833, 879 N.E.2d 765, ¶ 27 (award of attorney fees under the Consumer Sales Practices Act is not mandatory but is within the discretion of the trial court); see also *Hardeman v. Wheels, Inc.* (1988), 56 Ohio App.3d 142, 146, 565 N.E.2d 849.

{¶ 35} As the court observed in *Crews v. Altavista Motors, Inc.* (W.D.Va.1999), 65 F.Supp.2d 388, 391, the FTC rule "was not designed to act as a weapon to exact statutory and punitive damages against otherwise innocent creditors." A creditor whose only connection to a sales transaction is as a lender does not deserve to have an additional penalty—treble damages—imposed for the seller's misconduct under the Consumer Sales Practices Act. Cf. *French v. Dwiggins*, 9 Ohio St.3d at 35–36, 9 OBR 123, 458 N.E.2d 827 (characterizing treble damages under the Act as a penalty).

{¶ 36} Nor does the FTC rule impose derivative liability on a bank for an attorney-fees award against a seller. In Ohio, parties to litigation generally are responsible for their own attorney fees, absent a statute or an enforceable contract providing for the losing party to pay the prevailing party's attorney fees, or absent bad faith by the unsuccessful litigant. See *Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 33–34, 514 N.E.2d 702. The Consumer Sales Practices Act permits a discretionary award of attorney fees against a seller, but as noted above, the Act does not apply to the Reaganses' loan transaction with the bank. As a statutory exception to the "American Rule," an attorney-fees judgment against a seller under R.C. 1345.09(F)(2) serves as an additional penalty against sellers to discourage misconduct forbidden by the Act.

{¶ 37} The derivative liability of lenders under the FTC rule is not based on misconduct by the lender, who did not sell the consumer the defective goods or services. Consequently, the purpose of the FTC rule does not require that

---

3. R.C. 1345.09(B) was amended in 2007. Am.Sub.S.B. No. 117, effective Oct. 31, 2007. That amendment is not before us today.

buyers be permitted to set off the treble damages and attorney fees awarded against a seller against their remaining loan balance. Cf. 41 F.R. at 20,023 (the "consumer may not assert [against] the creditor any rights he might have against the seller for additional consequential damages and the like").

{¶ 38} The costs that the FTC rule seeks to shift to the creditor for the seller's misconduct are the actual, compensatory damages incurred in the consumer contract with the seller. See, e.g., 40 F.R. at 53,523 ("We conclude that a consumer's duty to pay for goods or services must not be separated from a seller's duty to perform as promised * * *"). Allowing consumers to assert claims or defenses for those actual, compensatory damages against creditors such as the bank furthers the FTC rule's purpose in requiring lenders, rather than individual consumers, to bear the cost of seller misconduct. See id.

{¶ 39} Treble damages under the Consumer Sales Practices Act, however, are not designed to compensate the consumer but to punish and deter the seller who engages in prohibited conduct. See *French v. Dwiggins*, 9 Ohio St.3d at 35–36, 9 O.B.R. 123, 458 N.E.2d 827 ("A statute which imposes treble damages as a penalty for misconduct is obviously intended to prevent or discourage such activity * * *"). Moreover, an attorney-fees award under the Consumer Sales Practices Act is not imposed in every case but, in the discretion of the trial court, only if the seller intentionally commits an act or practice that is deceptive, unfair, or unconscionable. See R.C. 1345.09(F)(2); *Einhorn*, 48 Ohio St.3d 27, 548 N.E.2d 933, syllabus.

{¶ 40} A creditor's potential derivative liability for compensatory damages under the FTC rule already provides creditors with an incentive to discourage sellers' misconduct. Neither the FTC rule nor the purpose behind it requires that innocent creditors also be held derivatively liable for additional awards intended as penalties against sellers.

{¶ 41} We conclude that the bank is not derivatively liable under the FTC rule for treble damages and attorney fees imposed against the seller under the Ohio Consumer Sales Practices Act. Accordingly, we hold that the buyers may not set off against their remaining debt to the bank the judgment for treble damages and attorney fees imposed on Sherry, the seller.

### III

{¶ 42} We hold that under the FTC-mandated notice in the buyers' loan contract, the buyers in this case are not entitled to a recovery from the bank above the maximum amount that the courts below found that the buyers paid on their consumer credit contract, or $53,778. We also hold that the buyers are not entitled to set off against their loan the judgment for treble damages and attorney fees awarded against the seller.

{¶ 43} The judgment of the court of appeals is affirmed for the reasons stated in this opinion.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

———————

Ronald L. Burdge and Elizabeth Ahren Wells, for appellants.

Taft, Stettinius & Hollister, L.L.P., and Timothy C. Sullivan, for appellee.